To:     U.S. District Judge Raymond Dearie
        U.S. District Court for the New York Eastern District
        225 Cadman Plaza East
        Brooklyn, NY 11201

Re:     _Komatsu v. USA_, No. 21-cv-1838 (RJD)(RLM) (S.D.N.Y. Jan. 19, 2023)

Sunday, February 5, 2023

Judge Dearie,

        Through this letter motion, I seek reconsideration, alteration, amendment, and

clarification pursuant to FRCP Rules 60 and 59 with respect to your 1/19/23 dismissal order

(Dkt. 196) in this case. FRCP Rule 6(d) confirms that the deadline for requesting this relief

expires today. I certainly also seek your recusal from it and a change of venue for this case to a

U.S. district court that is located outside of New York City to allow for the appearance of justice

to exist in this case. This letter is as long as it is because of how detailed and comprehensive it

needs to be in order to properly convey to you, the Second Circuit, and the U.S. Supreme Court

that your 1/19/23 dismissal order was so baseless, biased, and vexatious. The remainder of this

letter motion is comprised of the following sections:

| **Section** | **Page** |
|---|---|

1.    Preliminary Remarks ........................................................................................................1

2.    Information that I Incorporate by Reference as Though Fully Set Forth Herein ..............4

3.    Counterstatement Confirming That the Relief I Have Requested is Warranted ...............7

### Preliminary Remarks

1.      In the interests of brevity, throughout this letter motion, I'll refer to the acronyms shown

in the second column of the following table to refer to the entities, places, and other things to

which they correspond and appear in that table's third column:

| # | Acronym | Corresponds To |
|---|---------|----------------|
| 1 | ABA | The American Bar Association |
| 2 | ACLU | American Civil Liberties Union |
| 3 | City Council | New York City Council |
| 4 | CSO | Federal Court Security Officer |
| 5 | CSOs | Federal Court Security Officers |
| 6 | DOJ | The U.S. Department of Justice |
| 7 | DPM | The Daniel Patrick Moynihan federal courthouse in Manhattan |
| 8 | Eleventh Circuit | The U.S. Court of Appeals for the Eleventh Circuit |
| 9 | FOIA | Freedom of Information Act |
| 10 | FRCP | The Federal Rules of Civil Procedure |
| 11 | FTCA | The Federal Tort Claims Act |
| 12 | GSA | The U.S. General Services Administration |
| 13 | HRA | The New York City Human Resources Administration |
| 14 | Intercon | Inter-con Security Systems, Inc. |
| 15 | NYAG | New York State Attorney General's Office |
| 16 | NYCHA | The New York City Housing Authority |
| 17 | NYSCOA | The New York State Court of Appeals |
| 18 | NYU | New York University |
| 19 | OSC | Order to show cause application (this is for both singular and plural use) |
| 20 | The Pro Se office | The Pro Se Intake Unit for the U.S. District Court for the Southern District of New York |
| 21 | SCOTUS | The U.S. Supreme Court |
| 22 | Second Circuit | The U.S. Court of Appeals for the Second Circuit |
| 23 | Sixth Circuit | The U.S. Court of Appeals for the Sixth Circuit |
| 24 | TM | The Thurgood Marshall federal courthouse in Manhattan |
| 25 | USAO | The U.S. Attorney's Office for the Southern District of New York |
| 26 | USCOC | The Code of Conduct for U.S. Judges |
| 27 | USMS | The U.S. Marshals Service |
| 28 | USMSOGC | The USMS' Office of General Counsel |

2.     Throughout this letter, I'll also refer to the additional acronyms shown in the second

column of the following table to refer to the litigation shown in that table's third column:

| # | Acronym | Litigation |
|---|---------|-----------|
| 1 | K1 | *Komatsu v. USA*, No. 21-cv-1838 (RJD)(RLM)(S.D.N.Y. Jan. 19, 2023) |
| 2 | K2 | *USA v. Komatsu*, No. 18-cr-651(ST)(E.D.N.Y. Oct. 21, 2019) |
| 3 | K3 | *USA v. Komatsu*, No. 18-cr-671(VEC)(S.D.N.Y.) |
| 4 | K4 | *USA v. Komatsu*, No. 18-maj-6809 (KHP) (S.D.N.Y.) |

| 5 | K5 | *People v. Komatsu*, No. 2017BX048917 (Bronx Crim. Ct. Jan. 23, 2020) |
| 6 | K6 | *Komatsu v. City of New York*, No. 20-cv-10942 (VEC)(RWL)(S.D.N.Y. Jun. 17, 2022) |
| 7 | K7 | *Komatsu v. City of New York*, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y. Sept. 27, 2021) |
| 8 | K8 | *Komatsu v. City of New York*, No. 21-cv-11115 (LTS)(S.D.N.Y. Sep. 16, 2022) |
| 9 | K9 | *Komatsu v. New York City Human Resources Administration,* No. 100054/2017 (Sup. Ct. NY Cty. Feb. 26, 2020) |
| 10 | K10 | *Komatsu v. New York*, No. 22-5681 (U.S. Nov. 21, 2022) |
| 11 | K11 | *Komatsu v. City of New York*, 20-cv-7046 (ER)(GWG)(S.D.N.Y.)[1] |

3.      Throughout this letter, I'll also refer to the people listed in the second column of the following table in the manner shown in the third column of that table:

| # | Person | Reference Used |
|---|--------|----------------|
| 1 | New York State Supreme Court Judge Nancy Bannon | Nancy |
| 2 | U.S. District Judge Valerie Caproni | Valerie |
| 3 | Diana Cruz (Lyle's court attorney in February of 2020) | Diana |
| 4 | New York State Supreme Court Judge Lyle Frank | Lyle |
| 5 | U.S. Magistrate Judge Gabriel Gorenstein | Gabriel |
| 6 | Defendant Johnathan Hall | Mr. Hall |
| 7 | U.S. Magistrate Judge Robert Lehrburger | Robert |
| 8 | U.S. District Judge Colleen McMahon | Colleen |
| 9 | CSO Ralph Morales | Mr. Morales |
| 10 | Jeffrey Mosczyc (he is an attorney who works for HRA) | Jeffrey |
| 11 | Jerome Noriega (Nancy's court clerk) | Jerome |
| 12 | Former U.S. District Judge William Pauley | William |
| 12 | U.S. District Judge Edgardo Ramos | Edgardo |
| 13 | New York State Supreme Court Chief Clerk Denis Reo | Denis |
| 14 | U.S. Chief District Judge Laura Taylor Swain | Laura |
| 15 | New York State Supreme Court Judge Alexander Tisch | Alexander |
| 16 | U.S. Magistrate Judge Steven Tiscione | Steven |

4.      The next table lists abbreviations that I will use throughout this filing to refer to the things that are identified in the last column of that table.

---

[1] This is a consolidated case.

| # | Abbreviation | Reference |
|---|---|---|
| 1 | My 11/30/21 filing | The legal filing (Dkt. 90) that I filed in K1 on 11/30/21. |
| 2 | My 4/2/22 filing | The legal filing (Dkt. 131) that I filed in K1 on 4/2/22. |
| 3 | My 6/2/22 complaint | The amended complaint that I filed in K1 on 6/2/22. |
| 4 | Your 1/19/23 dismissal order | The dismissal order that you issued on 1/19/23 in K1. |
| 5 | The USMS' crimes | How I previously described this in numbered paragraph 6 on page 3 in my 6/2/22 complaint. |

**Information that I Incorporate by Reference as Though Fully Set Forth Herein**

1.      I incorporate by reference pursuant to FRCP Rule 10(c) all of the following as though fully set forth herein:

a.      The USCOC and the year-end report that SCOTUS published on 12/31/22 as a PDF file that is available at https://www.supremecourt.gov/publicinfo/year-end/2022year-endreport.pdf and was prepared by SCOTUS Chief Judge John Roberts.

b.      A report that the NYAG published about what stalking is and what its consequences are for its victims. That report is available as a PDF file at

https://ag.ny.gov/sites/default/files/pdfs/bureaus/criminal_prosecutions/stalking_guide.pdf.

c.      My 2/1/23 filing in K1, my 6/2/22 complaint, my 4/2/22 filing in K1, and my 11/30/21 filing.

d.      My complaint in K8 that includes a section that is entitled "Constitutional Deficiencies with Article 78 Proceedings"; the audio recording I have of the voicemail message that I received at 9:56 am on 4/11/17 from Jerome in which he informed me that Nancy had adjourned my 4/12/17 oral arguments hearing in K9 in response to an illegal ex-parte adjournment request; the 5/19/17, 8/13/18, 4/9/19 OSC that I filed in K9 and the original decisions and orders that Nancy, Alexander, and Lyle issued in response to them; Nancy's 1/26/17, 5/22/17, 8/10/17, 1/31/18, and 9/13/21 decisions and orders in K9; the cross-motion that

Jeffrey filed in K9 on 4/7/17 and the fax that he faxed to Nancy's chambers on 4/5/17 about K9;

the e-mail that I received from Denis on 6/5/17 at 9:09 am; Alexander's 9/17/18 order in K9, e-

mails that I received on 2/11/20 and 2/12/20 from Diana, and Lyle's 2/26/20 decision in K9.

   e.      Laura's 3/2/21 decision in K8.

   f.      Steven's 6/4/19 order in K2

   g.      The article that Jonathan Hall wrote about me that appeared in the Duke Law

Journal that was published in a report that is entitled "The Gorsuch Test: Gundy v. United States,

Limiting the Administrative State, and the Future of Nondelegation". That report is available as a

PDF file that is available at

https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=4038&context=dlj

   h.      Jonathan Hall's LinkedIn profile that is available at

https://www.linkedin.com/in/john-hall-17695867/ that confirms that the United States Courts

irrationally hired that liar as a law clerk after he committed defamation against me.

   i.      A film named "Pharma Bro" that was about Martin Shkreli. Further information

about this film that partly consists of the name of its director is available at

https://www.imdb.com/title/tt8522216/.

   j.      All video recordings that have been recorded by video security cameras that the

USMS controls that were recorded inside of and in close proximity to DPM, TM, and the

Brooklyn federal courthouse since 2/27/18 **a)** of me; **b)** interactions that I have had with CSOs,

USMS personnel, court clerks, and other courthouse personnel that partly include judges; **c)**

other CSOs and USMS personnel who have been near me inside and outside of those

courthouses who I didn't interact with then; all tablet computer that have displayed images of my

face and name on them in those courthouses.

k.     The written court transcripts that were prepared from **a)** the 12/14/21 conference that I had with Robert in K6, **b)** the 10/31/21 conference that I had with Gabriel in K7, and **c)** the 9/26/18 conference that I had with Valerie in K3.

l.     All complaints that I have reported to you and other federal judges, the USMS, CSOs, and the USAO about the USMS' crimes.

m.     All correspondence that I have received from you in which you expressed that you wouldn't grant me any relief about the USMS' crimes.

n.     The following standing orders that were issued by you and your predecessors with respect to your job as the U.S. Chief District Judge for the Southern District of New York while each of you then was the U.S. Chief District Judge for the Southern District of New York:

     i.     Standing order M10-468 that you issued on 5/18/21 in *In Re: Coronavirus/Covid-19 Pandemic,* No. 21-mc-00164 (S.D.N.Y.) that corresponds to docket number 8. That order is about restrictions that were imposed for visits to federal courthouses located in the Southern District of New York in response to the Covid-19 pandemic. That order is available at.

     ii.     Standing order M10-468 that you issued on 3/30/22 in *In Re: Coronavirus/Covid-19 Pandemic,* No. 20-mc-00316 (S.D.N.Y.) that corresponds to docket number 6. That order is available at https://www.nysd.uscourts.gov/sites/default/files/2022-04/20mc316 5th amd standing order.pdf. The terms of that order indisputably and illegally discriminates against me partly by virtue of the fact that it authorizes jurors and prospective jurors to keep and use their cell phones inside of federal courthouses in New York City instead of having them dropped by CSOs that could provoke those jurors and prospective jurors.

o.      A Twitter posting that was posted on 3/30/21 that is available at

https://twitter.com/BidenShotMyLeg/status/1376695660477562886 and includes a video

recording that shows Mr. Morales in it that Mr. Morales recorded of himself and uploaded on

Instagram before someone found, recorded a video recording of that, and uploaded that on

Twitter.

### **Counterstatement Confirming That the Relief I Have Requested is Warranted**

1.      You lied on page 1 by claiming that my claims in K1 were principally that CSOs and

members of the USMS violated my rights by harassing and mistreating me during many visits to

the federal courthouses in Manhattan. Contrary to your lie about that, my principal claims in K1

in K1 were also consisted about the fact that **a)** I was maliciously prosecuted in K2 as a direct

result of the USMS' crimes and **b)** USMS personnel and CSOs engaged in a criminal cover-up

about the USMS' crimes against me.

2.      You lied on page 1 by claiming that I'm a frequent visitor to federal courthouses in

Manhattan. This is a lie and otherwise irrelevant. It's a lie because I decided long ago to rarely

visit those courthouses largely to try to greatly reduce illegal stigmatization of me by CSOs in

them that occurs every single time that I'm stalked, seized, assaulted, and shouted at by them

inside of those courthouses as well as otherwise intentionally delayed by them in moving to other

areas in those courthouses. My decision to rarely visit those courthouses was made largely to see

if it could be possible to greatly lessen the degree to which such illegal and otherwise abusive

acts and omissions by CSOs and USMS personnel sabotaged my rights to fair trials partly by

causing potential jurors to become prejudiced against me inside of those courthouses as a result

of their observations of how CSOs treated me in them.

3.      The information in the footnote section on page 1 indicates that you're honorable. You certainly aren't. There is nothing honorable about the material fact you have illegally condoned and facilitated the USMS' crimes against me by inaction. There also is nothing honorable about lying outright and by omission as a judge. There also is nothing honorable about shirking your legal duty to accord me special solicitude partly by insolently refusing to grant me an extension of time to submit this letter motion. As a result, your own behavior and conduct confirm that you're the exact opposite of being honorable.

4.      You lied on page 2 by claiming that on 3/13/18, Mr. Galgano me discouraged me from filing an official complaint and threatened to arrest me if I didn't promptly leave DPM. This is a lie because Mr. Morales did those things instead.

5.      You lied at the top of page 3 by claiming that on 8/8/18 I was arrested and charged for inflicting bodily injury on a CSO. This is a lie because there never was an allegation that I inflicted bodily injury on any CSO. The charge to which you referred instead was about attempting to commit an assault instead. Even the CSOs reported that I didn't assault Mr. Morales. They instead claimed that Mr. Morales grabbed my hand that they alleged I had intended to use to assault him on 8/8/18 inside of DPM before I could actually carry out that alleged assault.

6.      You lied on page 3 by claiming that the City of New York released a headshot that was taken of me. I never made that specific claim. It has always been my position that the USMS instead somehow obtained that headshot from the City of New York before that headshot was shown on tablet computer screens by CSOs and the USMS inside of federal courthouses.

7.      You lied between pages 3 and 4 by claiming that in response to the fact that my claims in this case were against officials of the Southern District of New York, K1 was reassigned to you.

Contrary to your lie, the decision that was made about that was simply to grant me a change of venue for K1 from Manhattan to Brooklyn. It was only after that decision was first made that you were then assigned to K1.

8.      You lied on page 4 by claiming that you read every letter that I filed in this case and that you responded to those submissions when necessary. This is a lie primarily the act of reading also requires complete comprehension of the material that is being read. The material fact that I previously and clearly proved that Mr. Hall committed defamation against me in the manner that I specified in K1 and I reiterated that extremely clearly in my 4/20/22 filing in K1 while using 16-point font and double underlining to emphasize my point about that confirms that you illegally and prejudicially ignored that information that included a relevant screenshot from Steven's 6/4/19 order in K2. The fact that you didn't respond to my 4/20/22 letter in K1 confirms that you lied by claiming that you responded to my submissions in K1 when necessary.

9.      You lied on page 7 by claiming that though I submitted a "formal complaint with the USMS on" 9/24/21, that filing that was filed 6 months after I commenced K1 didn't cure my alleged failure to comply with the presentment requirement at the outset of K1. This is a lie mainly because estoppel blocked the enforceability of that presentment requirement and equitable tolling is warranted for my FTCA claims. _Olivio v. United States_, No. 20-cv-231 (RPK)(MMH) (E.D.N.Y. Feb. 10, 2022) explicitly states that "the FTCA's presentment requirement is subject to equitable tolling" and that "rare and exceptional" circumstances may warrant such tolling. Such tolling is warranted for my FTCA claims and estoppel otherwise prohibits the enforcement of the presentment requirement for them partly due to **a)** the continuing violation doctrine and **b)** concealment and destruction of video recording evidence by the USMS. Equitable tolling is also warranted due to the fact that I had to contend with K2, K3,

and K4 caused me to suffer the opportunity cost of time that I spent on dealing with that litigation that includes a lot of time researching matters while I could have otherwise used that time to prepare and submit a FTCA claim in a far more timely manner. The fact that I didn't receive a response about my 9/24/21 FTCA claim to the USMS establishes that the USMS caused that claim to be denied by not issuing a response to it to me within 6 months after I submitted that claim to it. This necessarily means that you abused your discretion by dismissing my FTCA claims in K1 with prejudice instead of diligently checking to determine whether the USMS responded to y 9/24/21 submission within 6 months. You also needed to account for the fact that **a)** CSO Peter Kornas' 6/29/21 seizure of me inside of DPM on its first floor was a continuing violation about my FTCA claims and **b)** I didn't include any claim against Mr. Kornas in my original complaint in this case because that 6/29/21 incident occurred after I filed my original complaint in this case.

10.     Concerning what I just discussed, the Second Circuit pointed out in its 11/17/20 decision in _Lucente v. County of Suffolk_, 980 F.3d 284 (2d Cir. 2020) that if a Monell claim exist together with other claims pertaining to continuing violations, then it would be sufficient for a plaintiff to plausibly allege an "ongoing policy of discrimination and some non-time-barred acts taken in furtherance of" that policy as well as "the acquiescence of policy-making officials in subordinates' misconduct" with respect to such a policy of discrimination in order for that plaintiff to be granted equitable tolling for all of the illegal acts and omissions that were continuing violations. Concerning the presentment requirement for FTCA claims, since USMS personnel illegally didn't preserve and provide me video recording evidence that the USMS was legally required to both preserve and provide to me in response to **a)** the likelihood that I would commence K1, K2 having been commenced against me, and **c)** timely FOIA demands that I

submitted to the USMS for video recording evidence, the illegal concealment and destruction of those videos by the USMS is precisely what blocks the enforceability of the presentment requirement. This is analogous to destroying someone's ability to take a test by destroying his or her study materials prior to failing that student for performing really badly on the test.

11.      _Capitol Records, Inc. v. Thomas-Rasset_, 692 F.3d 899 (8th Cir. 2012) contains the following findings that confirm that you have the authority to essentially cause the FTCA's presentment requirement unenforceable for my FTCA claims in K1 in response to the actions that were taken by USMS personnel to deprive me of highly probative video recording evidence that I certainly could have used to better identify and with greater detail the dates, times, specific locations in and near federal courthouses in New York City when the acts and omissions that caused my FTCA claims to arise occurred while also identifying witnesses:

   a.   "a district court has authority to issue a broad injunction in cases where "a proclivity for unlawful conduct has been shown."

   b.   "The district court is even permitted to "enjoin certain otherwise lawful conduct" where "the defendant's conduct has demonstrated that prohibiting only unlawful conduct would not effectively protect the plaintiff's rights against future encroachment.""

   c.   "If a party has violated the governing statute, then a court may in appropriate circumstances enjoin conduct that allowed the prohibited actions to occur, even if that conduct "standing alone, would have been unassailable.""

12.      The following except from _Chambers v. Nasco, Inc._, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) buttresses this point by confirming that in instances in which neither applicable statutes nor rules are up to the task, you're authorized to invoke your inherent power as a federal judge to grant me equitable relief partly about this:

   "Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."

13.     The fact that I'm a pro se plaintiff in K1 and the USMS certainly has been engaging in a criminal cover-up about the USMS' crimes against me partly by willfully sabotaging my efforts to gather relevant evidence that has been in its possession to best substantiate my claims in K1 is sufficient to confirm that the findings in _Baldwin County Welcome Center v. Brown_, 466 U.S. 147, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984) that state that "Courts are required to`be sensitive to the problems faced by _pro se_ litigants and innovative in their responses to them" applies to this and others partly by confirming that equity and comity clearly warrant having you declare that the presentment requirement for my FTCA claims in K1 is unenforceable due to the wrongful acts by the USMS' own personnel. _Vega v. Hempstead Union Free School Dist._, 801 F.3d 72 (2d Cir. 2015) confirms that you're legally required to "draw on" your "judicial experience and common sense" partly for making a decision on the merits as to whether USMS personnel subjected me to obstruction of justice partly by illegally withholding and destroying video recording evidence that I sought and that prejudiced my ability to prepare a better-informed FTCA claim to submit to the USMS. Moreover, this is also a situation about which the following findings from _People v. Beshiri_, No. 2019BX019319 (Bronx Crim. Ct., May. 16, 2022) apply to explain why the USMS must suffer the consequences of the deviant behavior by its personnel partly by concealing and destroying evidence that is not to be condoned by judges:

>        "To slightly re-order the words of Daniel Patrick Moynihan, deviancy can be defined
>        downward only so far before there are consequences."

14.     You lied on page 9 by mischaracterizing one of my claims in K1 by claiming that my claim was about CSOs following me inside of federal courthouses as opposed to stalking me. As opposed to a child following his parent that is an innocent act, stalking isn't. My claim in K1 was about illegal stalking instead of a following of me. Diligently read and fully understand what the

NYAG had to say about stalking and its consequences for victims of stalking in the NYAG's report that is available at

https://ag.ny.gov/sites/default/files/pdfs/bureaus/criminal_prosecutions/stalking_guide.pdf. The table shown next lists relevant excerpts from that report and the page number of where that information is from.

| # | Excerpt | Page |
|---|---------|------|
| 1 | Stalking affects men and women without regard for race, socioeconomic status, or individual associations and preferences. | 3 |
| 2 | Stalking is a persistent and unwanted pursuit of an individual by another that would cause a reasonable person to fear. It is an intentional and unpredictable course of conduct that can be annoying, intrusive, intimidating, threatening and harmful. Victims may be followed or watched, or harassed with relentless unwanted tokens of affection or messages. Even behaviors that seem harmless, such as sending flowers or gifts, may be deemed important incidents, depending on the context. | 2 |
| 3 | Stalking frequently involves an escalating series of incidents. The vast majority of stalkers are obsessed with their victims, intent on exerting power and control over their target, using a variety of tools including high-tech devices. Common behaviors of stalkers include, but are not limited to:<br><br>• Following or watching the victim<br><br>• Trespassing or being present near the victim's home or workplace<br><br>• Stealing or vandalizing mail or property of the victim<br><br>• Initiating unwanted contact or communications through deliveries, telephone calls, mail, pagers, email, or any other medium to the victim and her/his family, neighbors or co-workers<br><br>• Using digital or video cameras, GPS (global positioning systems) and other tracking devices<br><br>• Monitoring the victim's Internet history and computer usage | 2-3 |
| 4 | "The impact of stalking includes emotional, physical and financial consequences. Because of the danger and feelings of insecurity and vulnerability, victims of stalking are frequently forced to relocate, change jobs, obtain orders of protection and other security devices, and seek counseling. There are also increased costs for society which are attributed to absenteeism, lost productivity, health care and law enforcement." | 5 |

15.     The stalking of me by CSOs inside of federal courthouses mostly at the direction of USMS personnel violated 18 U.S.C. §1509; the USCOC's terms, my rights to continuous serenity and calm in them (*see Sheppard v. Maxwell*, 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966)); *In re Snyder*, 472 U.S. 634, 105 S. Ct. 2874, 86 L. Ed. 2d 504 (1985) (this confirms that CSOs and USMS personnel are legally required to accord me courtesy); and findings in **a)** *Picard v. Magliano*, No. 20-3161 (2d Cir. Jul. 27, 2022), **b)** *Olmstead v. United States*, 277 U.S. 438, 48 S. Ct. 564, 72 L. Ed. 944 (1928), and **c)** *Carpenter v. US*, 138 S. Ct. 2206, 585 U.S., 201 L. Ed. 2d 507 (2018). The last sentence in the first paragraph on page 31 in the decision in *Picard v. Magliano* sufficiently confirms that stalking of me by CSOs that may cause or "exacerbate" an "impression" to others that some sort of "protection" is needed inside of a courthouse because of me causes that stalking to be illegal partly because that practice illegally discriminates against me by subjecting me to differential treatment that a disinterested observer would not find has a rational basis. *Olmstead v. United States* was cited by the NYSCOA's decision in *People v. Howard*, 50 N.Y.2d 583, 430 N.Y.S.2d 578, 408 N.E.2d 908 (1980) and confirms that people have a right to be alone by law-enforcement personnel while they're conducting themselves in a lawful manner. *Carpenter v. US* contains the following pertinent findings that concern privacy rights and unlawful surveillance:

    a.      "**A majority of this Court has already recognized that individuals have a reasonable expectation of privacy in the whole of their physical movements.**"

            (boldface formatting added for emphasis)

    b.      "A person does not surrender all Fourth Amendment protection by venturing into the public sphere. To the contrary, "what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

    c.      "society's expectation has been that law enforcement agents and others would not — and indeed, in the main, simply could not — secretly monitor and catalogue every single movement of an individual's car for a very long period.""

16.    The rather lengthy excerpts from U.S. District Judge Alvin Hellerstein's 5/24/22 decision

in _Powell v. United States_, No. 19-cv-11351 (AKH) (S.D.N.Y. May 24, 2022) that I included

between pages 2 and 4 in my 2/1/23 filing in K1 sufficiently counters your remarks that start on

page 8 in your 1/19/23 dismissal order about the inapplicability of Bivens for my claims in K1 to

establish that my claims in K1 are compatible with Bivens. As was the case in _Powell v. United_

_States_, I asserted entirely valid claim in K1 that were partly about CSOs and USMS fabricating

information in furtherance of a malicious prosecution of me and a denial of my due process

rights in violation of the Fourth and Fifth Amendments. My claims in K1 that are about harm

that I experienced as a result of CSOs who subjected me to illegal seizures on their own and

together with USMS personnel partly by falsely arresting me on 8/8/18 violated Fourth

Amendment prohibitions against unreasonable searches and seizures. Judge Hellerstein pointed

out very clearly in _Powell v. United States_ that he would allow Bivens to cover those claims. The

material fact that U.S. Supreme Court Chief Judge John Roberts, Jr. pointed out in the year-end

report that he issued for SCOTUS in 2022 that courthouse buildings belong to the public causes

illegal acts and omissions that are committed inside of those buildings that would be covered by

Bivens if they occurred in someone's home to be covered by Bivens too. This is partly because

in the same way that people maintain offices in their homes in which they may attend to

litigation matters partly by doing legal research, I have visited buildings that similarly belong to

me to also do so. It's inconsequential that those buildings happen to include DPM, TM, and the

Brooklyn federal courthouse. All that matters is that I'm among people to whom those buildings

belong. I previously apprised you in my 1/2/23 filing in K1 about this information about that

year-end report. I similarly apprised you then about why the following except from the order that

U.S. District Judge William Conley issued on 8/3/18 in *White v. Tanula*, No. 14-cv-759-WMC

(W.D. Wis. Aug. 3, 2018) is relevant in K1:

> "The United States Courthouse that you entered this morning is not the judges'
> courthouse; neither is it the lawyers' courthouse; nor even the litigants' courthouse.
> This is your courthouse and your system of justice. Indeed, this building belongs to
> the public; and it is important that each of us keep in mind that the public's business is
> being conducted here."

17.     The preceding discussion belies your self-serving claim on page 9 in your 1/19/23

dismissal order in which you claimed that the federal government owns and controls the federal

courthouses in New York City. Contrary to your contention and as the expression goes,

government in the U.S. is "of the people, by the people, for the people". If you can't accept that,

go to Russia. You further lied on page 9 by claiming that the "search" of Mr. Komatsu's person

here was visual, not physical, and the "seizure" was of his backpack, not of his body. Contrary to

your lie about that, I clearly asserted claims in K1 about illegal seizures and assaults against me

as well as illegal detentions by CSOs that were partly acting at the direction of USMS personnel

while doing so partly on 2/28/18, 3/13/18, 3/14/18, 7/9/18, 8/7/18, and 6/29/21. The fact that

USMS personnel engaged in a criminal cover-up by concealing and destroying video recording

evidence that recorded such illegal seizures, detentions, and assaults confirms that the following

findings from *Hays v. Jefferson County, Ky.*, 668 F.2d 869 (6th Cir. 1982) apply to cause at least

some of those seizures, detentions, and assaults to be attributable to USMS personnel who

enabled, acquiesced, and ratified that abuse while after I began reporting complaints about that to

the USMS and others in March of 2018:

> "The result of *Rizzo* and subsequent cases in the lower federal courts applying the
> standards it announced is that a failure of a supervisory official to supervise, control,
> or train the offending individual officers is not actionable absent a showing that the
> official either encouraged the specific incident of misconduct or in some other way
> directly participated in it. At a minimum a plaintiff must show that the official at least
> implicitly authorized, approved, or knowingly acquiesced in the unconstitutional

conduct of the offending officers. *See, e.g., Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I.1978).

Where, as here, the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable, *e.g., Leite v. City of Providence,* 463 F.Supp. at 590, or would properly be characterized as substantially certain to result, *Rheuark v. Shaw,* 477 F.Supp. 897 (N.D. Texas 1979)."

18.    You lied on page 10 by claiming that "several remedial structures exist to protect parties like Plaintiff from mistreatment at the hands of USMS officials." Contrary to your lie, though those and other structures exist, they indisputably haven't provided me any redress largely because the USMS personnel, CSOs, and federal judges don't comply with applicable policies, processes, procedures, laws, and regulations. The material fact that I repeatedly reported timely, detailed, and truthful complaints to no avail to the USMS' Internal Affairs division and DOJ's Office of Inspector General about the USMS' crimes mostly in writing and left a trail by doing so sufficiently buttresses this point. Footnote number 10 that you included on page 10 refers to the USMS' Office of Professional Responsibility that itself is partly comprised of the same USMS' Internal Affairs division that illegally didn't end the USMS' crimes against me after I began reporting timely, truthful, and detailed complaints to the USMS' Internal Affairs division in March of 2018. The sum and substance of the information in a report that was issued on 12/18/18 by the U.S. Senate's Judiciary Committee and was about that committee's investigation of allegations of wrongdoing by USMS personnel further reinforces this point. That report is a PDF file that is 430 pages in length. It's available at

https://www.judiciary.senate.gov/imo/media/doc/2018-12-21 Memo on Judiciary Committee Investigations into USMS.pdf. U.S. Senator Chuck Grassley was the head of that committee back then and issued a press release on 1/3/19 about that report. That press release is available at

https://www.grassley.senate.gov/news/news-releases/multi-year-investigation-reveals-widespread-waste-misconduct-highest-echelon and is entitled "Multi-Year Investigation Reveals Widespread Waste & Misconduct at Highest Echelon of Marshals Service". The information in the 430-page report that I mentioned contains information about retaliation against whistleblowers, a lack of a procedure for reporting misconduct, and USMS personnel having illegally forged a judge's signature on hundreds of subpoenas. Despite these facts and the fact that the USMS has consistently engaged in a criminal cover-up in regards to me and my claims in K1 as well as my defense in K2, you baselessly, biasedly, prejudicially, and stereotypically claimed on page 10 that sufficient remedial structures existed within the USMS to protect me "from mistreatment at the hands of USMS officials". That claim is irreconcilable with the fact that the USMS sent me a notice dated 5/30/18 in which the author lied by claiming that the USMS had included video recordings that were recorded in DPM on 3/13/18 and 3/14/18 before Katherine Day later informed me on 8/20/18 in a voicemail while she then worked for the USMSOGC's FOIA division that whoever made that claim had lied because those video recordings weren't provided to me and were instead recorded over. The 5/30/18 notice I just referred to is shown on page 36 and 37 in my 4/2/22 filing in K1. I still recall how Mr. Morales taunted me during my first encounter with him in DPM in March of 2018 in the security screening area on its first floor as one of the things he told me then that whatever complaints that I would report to the USMS against CSOs would simply be referred to him. He made such a remark then while he was among CSOs who were illegally harassing me and who illegally coerced me to leave DPM while I was conducting myself in a lawful manner in contrast to him. This explains why the USMS didn't provide me the videos from then. On a related note, the 1/30/23 decision in *Stark v. City of New York*, No. 21-2886 (2d Cir. Jan.30, 2023) contains the

following findings that confirm that USMS personnel illegally engaged in obstruction of justice

concerning my claims in K1 and my defenses in K2 by illegally withholding and deleting video

recording evidence that was recorded partly in DPM and partly on 3/13/18, 3/14/18, 6/11/18,

9/26/18, and 6/29/21:

> "[Det.] Lee was not free to disregard the plainly exculpatory evidence that was
> presented to him."). In the absence of exigent circumstances, she had a duty to
> consider "any new or corrective information that reasonably would have affected
> [her] initial decision [that probable cause existed]." *United States v. Marin-Buitrago*,
> 734 F.2d 889, 893 (2d Cir. 1984) ("Failure to apprise the magistrate of such
> information would result in the invalidation of the warrant.")"

19.     You lied on page 10 by claiming that I have a suitable alternative remedy with respect to

the USMS for my <u>Bivens</u> claims and that my claims in K1 for a <u>Bivens</u> action couldn't proceed

in K1 for that reason. You also lied on page 10 by claiming that CSOs aren't employees of the

federal government in addition to being employees of private businesses. That claim is utterly

unworthy of credence. The finding in <u>*City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988)</u>

that points out that "actual policies were different from the ones that had been announced"

applies to the USMS' claim that CSOs aren't among its employees. The degree to which the

USMS **a)** controls and directs how CSOs operate inside of federal courthouses, **b)** trains them, **c)**

equips them, **d)** illegally covers-up and condones illegal and otherwise abusive behavior by them

inside of federal courthouses partly by destroying video recording evidence, and **e)** and may

cause them to be suspended or fired as CSOs sufficiently establishes that CSOs have joint-

employers while the USMS is one of them. This point is clearly affirmed by **f)** <u>*Walton v. US*</u>

<u>*Marshals Service*, No. C 03-01460 SI (N.D. Cal. Aug. 27, 2004)</u>, **g)** <u>*McMullin v. Ashcroft*, 337 F.</u>

<u>Supp. 2d 1281 (D. Wyo. 2004)</u>, **h)** <u>*Strolberg v. Akal Sec. Co.*, 2005 WL 5629026 (D. Idaho Jan.</u>

<u>19, 2005)</u>, and **i)** <u>*Ruiz v. Mukasey*, 594 F. Supp. 2d 738 (S.D. Tex. 2008)</u> that have all confirmed

that the USMS is one of the joint-employers of CSOs. In fact, the decision in <u>*Paterson v.*</u>

*California Department Of General Services*, No. 2: 05-cv-00827-MCE-JFM (E.D. Cal. Oct. 27, 2008) reveals that Intercon was a joint-employer of personnel together with a different federal government agency and that Intercon retaliated against a whistleblower who was among that personnel in response to a complaint about harassment.  Also, the following is an excerpt from *Walton v. US Marshals Service*, No. C 03-01460 SI (N.D. Cal. Aug. 27, 2004) about the fact that the USMS has been found to be a joint-employer of CSOs:

> The Court came to that conclusion in its earlier Order after applying the "joint employer" and "economic realities" test to the facts as given. These subsequent motions offer additional factual information; however, the underlying legal questions remain the same. Applying these tests to the additional facts presented leads the Court to the same conclusion. On balance, the USMS is rightly deemed a joint employer of CSOs. The Court must stress, however, that this determination is specific to the unique relationship between the USMS and its security contractors, and the unique and highly consequential responsibility of contracted security officers. The CSOs are given the weighty responsibility for "the *complete safety and security* of judges, court personnel, jurors, witnesses, defendants, attorneys, federal property and the general public." CSO Contract Section C-5 (d)(1) (emphasis added). Consistent with this mandate, the CSOs' relationship with the USMS is significantly intertwined.

20.     The preceding excerpt confirms that you lied in the footnote section on page 10 by claiming that my assertion that CSOs have 2 employers while the USMS is among them didn't nudge my claim that "the USMS employs CSOs across the line from conceivable to plausible." Moreover, contrary to your lie, special solicitude that you were required to continuously accord me in K1 obligated you to enable me to engage in meaningful discovery in K1 partly to ascertain the degree to which the USMS controls, trains, and disciplines CSOs partly by possibly causing them to be demoted, suspended, and fired as such that are indicative of being an employer. This point is buttressed by the Eleventh Circuit's decision in *Freeman v. Us Marshal Service*, No. 08-11985 (11th Cir. Feb. 6, 2009). The district court case that that appeal concerned was about a CSO who illegally coerced a woman to walk through a metal detector in a courthouse in spite of the fact that she told him beforehand that she had a surgical implant that should have exempted

her from having to do so for medical reasons. That CSO illegally coerced to her to comply with

his criminally negligent demand by telling her that he would have her arrested if she didn't

comply with that. After she complied with that, she experienced both physical pain and

emotional distress from that experience. As per the following excerpt from the Eleventh Circuit's

decision for that appeal, the Eleventh Circuit reversed the district court's decision to **a)** dismiss

the underlying case it concerned and **b)** deny that woman the ability to engage in meaningful

discovery to determine whether the USMS was a joint-employer of CSOs:

> "We conclude that, while summary judgment may be appropriate in this case in the
> future, it was prematurely granted. Therefore, we vacate the summary judgment and
> remand to the district court for further proceedings, including discovery."

21.     Former U.S. District Judge Jack Weinstein also confirmed that you discriminated against

me by not letting me proceed to discovery in K1 as he confirmed that in _DaCosta v. City of New_

_York_, 296 F. Supp. 3d 569 (E.D.N.Y. 2017) by stating the following about discovery in it partly

in the context of a discussion about a particular need for discovery in police civil rights cases:

  a.     "Decisions of the Court of Appeals for the Second Circuit reflect the broad
         principle that courts should not be quick to dismiss plaintiffs for lack of
         information that is in the possession of the defendants. Elimination of the
         information asymmetry that exists at the outset of every case is a bedrock
         principle of our legal system; after all, "[m]utual knowledge of all the relevant
         facts gathered by both parties is essential to proper litigation." _Hickman v._
         _Taylor,_ 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The Court of
         Appeals for the Second Circuit has consistently emphasized that courts should be
         more lenient with civil rights pleadings and permit discovery when plaintiffs
         would otherwise not be able to state a claim for relief due to a lack of information
         about defendants and their practices. Though the court has been particularly
         solicitous of allowing discovery under these circumstances when the plaintiff
         appears _pro se,_ the rationale of these decisions is not so limited."

  b.     "The purpose of discovery is to allow the parties to litigate based on complete
         information — "[m]utual knowledge of all the relevant facts gathered by both
         parties is essential to proper litigation.""

  c.     "Discovery requests shall be read reasonably in the recognition that the attorney
         serving them generally does not have the information being sought and the

attorney receiving them generally does have such information or can obtain it from the client."

d.    "In order to facilitate this sharing of information, "[c]ounsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process and to be courteous in their dealings with each other, including in matters relating to scheduling and timing of various discovery procedures." S.D.N.Y. & E.D.N.Y Local R. Civ. P. 26.4(a) (formerly S.D.N.Y. & E.D.N.Y Local R. Civ. P. 26.5). S.D.N.Y. & E.D.N.Y Local R. Civ. P. 26.4(b) (formerly S.D.N.Y. & E.D.N.Y Local R. Civ. P. 26.7). This local rule requires cooperation from the opposing counsel in discovering critical facts, not an avoidance by the monkey's: don't see, don't hear, don't say."

22.    You lied on page 11 by claiming that <u>Minecci</u>'s rule applies here as you erroneously and presumptively contended that traditional state law tort causes of action, such as those for assault and battery, provide an alternative avenue for addressing the CSO conduct that I complained of. When you lied about that then, you did so after Laura similarly lied in her 3/2/21 decision in K8 as she stereotypically and fraudulently claimed then that article 78 proceedings in New York's state courts provide constitutionally sufficient procedures. She was dead wrong about that and I promptly corrected her about that in K8 through a legal filing that I filed in it. I informed her in that filing that K9 was plagued by judicial misconduct to my detriment. K9 was conducted as a multifaceted hybrid proceeding that partly consisted of an article 78 component. Claims that I pursued in K9 were partly against court officers and NYPD personnel partly about an illegal assault against me by a NYPD officer in a public forum and an illegal seizure of a sealed legal filing of mine in K9 by a court officer in a public hallway in a courthouse after I completed the security screening process to enter it and while I was conducting myself in a lawful manner in contrast to that criminal and other court officers nearby who illegally didn't intervene on my behalf. Alexander's 9/17/18 order in K9 confirms that Nancy illegally dismissed K9 on 1/31/18 while I still had claims that were pending in it. She did so after she illegally engaged in collusion with Jeffrey to steal my scheduled 4/12/17 oral arguments hearing in K9 that she had scheduled

on 1/26/17. That theft was the result of illegal ex-parte communications between them between 4/5/17 and 4/11/17. Nancy and Alexander also illegally ignored evidence on USB thumb drives that I filed in K9 on 5/19/17 and 8/13/17. Moreover, Lyle's original 4/9/19 order in K9 illegally dismissed K9 while I still had claims that were pending in it. These are just some of the many major deficiencies that occurred in K9. I can elaborate and substantiate that further in a separate pleading. Hindsight confirms that your assertion that a New York state-court proceeding provided me an alternative avenue for addressing the CSO conduct that I complained of in K1 was naive, premature, unduly prejudicial, ignorant, stereotypical, conclusory, vexatious, and presumptuous.

23.     You lied on page 11 by claiming that I didn't have a cause of action under Bivens and that my constitutional claims against Inter-Con, Centerra, and their privately-employed CSOs needed to be dismissed for that reason. Even if you were correct about this, the simple fact that my claims in K1 are about overlapping matters clearly warranted you to exercise supplemental jurisdiction over matters that would otherwise be litigate in state-court. _Rosenberg v. City of New York_, 20-cv-4012 (LLS) (S.D.N.Y. July 13, 2020) confirms that by stating the following about judicial economy:

> "Chief Judge McMahon noted that claims arising out of the same events should be included in a single suit: Rather than prosecuting two lawsuits with overlapping claims against many of the same parties, Plaintiff could amend the complaint in 20-CV-3911, consistent with Rule 15 of the Federal Rules of Civil Procedure, to include all of his claims arising from those events in one action under docket number 20-CV-3911."

24.     You also lied on page 11 by fraudulently claiming that **a)** I didn't state a claim under 42 U.S.C. §§ 1985, 1986, and 1988, **b)** I didn't specify which of 42 U.S.C. §1985's subdivisions in my 6/2/22 complaint that I intended to invoke, and **c)** only 42 U.S.C. §1985(3) was relevant in regards to my 6/2/22 complaint. Contrary to your lie, numbered paragraph 28 on page 86 in the

PDF file that corresponds to my 6/2/22 complaint confirms that I explicitly identified 42 U.S.C.

§1985(3) in the context of a discussion about the fact that I was a member of a class in regards to

people who express other criticism of government officials and their policies when Defendants

Galgano and Quealley retaliated against me on 2/28/18 inside of DPM for such criticism that I

lawfully expressed to them then. Other members of such a class partly include the following:

a.      The plaintiff in *Sevy v. Barach*, No. 17-13789 (E.D. Mich. Aug. 5, 2019) who was

illegally assaulted by court officers in a courthouse in retaliation for lawfully criticizing them and

courthouse policies.

b.      A former CSO named Gary Romano who sued Akal Security, Inc. in response to

the fact that he was retaliated against by having his employment as a CSO terminated after he

reported complaints to the DOJ about unfit CSOs who he worked with.

c.      Duane Dingler and James Dempsey who both were employed by Intercon while

they worked as CSOs inside of a federal courthouse prior to being fired from their jobs by

Intercon for what they claimed was retaliation about complaints they reported as whistleblowers

against a coworker who mishandled a gun. Further information about that is discussed in a news

article that is entitled "Fired Federal Court Security Officers Sue Former Employer" that was

published on 7/19/17 by the Burlington Free Press. That article is available at

https://www.burlingtonfreepress.com/story/news/local/2017/07/19/fired-federal-court-security-

officers-sue-former-employer/489443001/. The fact that Mr. Dingler and Mr. Dempsey lost their

lawsuit against Intercon about that matter that they commenced and corresponds to *Dingler v.*

*Inter-Con Security Systems, Inc.*, No. 5:17-cv-00132 (GWC)(D. Vt. Mar. 9, 2020) doesn't mean

that they didn't have valid claims against Intercon. Quite to the contrary, that certainly could

mean that like me in this case, they also had a judge who was assigned to their lawsuit who lied and otherwise ignored material matters of fact and law in a case partly against Intercon.

       d.     Others that include people with disabilities, members of the public, and journalists who report complaints to courthouse personnel that include court officers and judges partly about violations of their First Amendment right of access to courthouses, publicly filed court filings, and court hearings. A news organization named Courthouse News published a news article on 1/17/13 that summarized that lawsuit. That article is entitled "Fired for Worries About Court Security, Worker Says" and is available at https://www.courthousenews.com/fired-for-worries-aboutcourt-security-worker-says/. The lawsuit was settled in February of 2014 after it was first filed on 1/15/13 with the Superior Court of California in San Francisco with the case number of "CGS-13-528012" and then removed to *Romano v. Akal Security, Inc.*, No. 4:13-cv-0806 (YGR) (N.D. Cal.).

25.     You further lied on page 11 as you did so in its footnote section by claiming that though Section 1985(2) provides a cause of action against two or more persons who conspire to obstruct justice in the federal courts by force, intimidation, or threat, none of the facts in my 6/2/22 complaint related in any way to those causes of action. The following facts contradict those claims by you:

       a.     What I discussed earlier about SCOTUS' 2022 year-end report with respect to the following remark that Chief Judge Roberts stated in it applies as he was then referring to federal courthouses:

              "They will make it possible for every American to visit a courthouse, because the buildings and what they represent belong to the public."

       b.     By stating that both the buildings in which federal courts operate and what they represent "belong to the public", Judge Roberts confirmed that I'm among others who DPM,

TM, and the Brooklyn federal courthouse belong to. Page 4 in that report states that a judicial system cannot and should not live in fear" and stressed "the importance of rule by law instead of by mob". As a plaintiff in federal court litigation and observer of court hearings in other federal court litigation, I'm part of the "judicial system" to which Judge Roberts referred in his remarks. What I discussed earlier about *White v. Tanula* also applies.

      c.      42 U.S.C. §1985(2) states the following:

> **(2) Obstructing justice; intimidating party, witness, or juror**
>
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

      d.      The following facts confirm that a diligent and entirely objective review of 42 U.S.C. §1985(2) and the information in my 6/2/22 complaint, my 11/30/21 filing, and other filings that I have filed in K1 establishes the fact that I sufficiently asserted valid claims pursuant to 42 U.S.C. §1985(2) in my 6/2/22 complaint:

            i.      While I was a plaintiff in federal court litigation partly in K7 that I commenced on 4/26/18, more than 2 CSOs and USMS personnel certainly conspired on multiple dates and in multiple ways through their acts and omissions to deter me from the following by force, intimidation, and threats:

1)      Attending court hearings in litigation of mine and others in which I would be permitted to testify to judges. For example Defendant Anthony Venturella absolutely subjected me to flagrant intimidation tactics and threats on 9/26/18 in his capacity as a CSO in the immediate presence of members of the public, Edward Friedland (he is the District Executive for the U.S District Courts in Manhattan), Jordan Prince (he works for Mr. Friedland) in public corridors inside of DPM on the first and ninth floors shortly before I testified to William during a court hearing that William held in *US v. New York City Housing Authority*, 347 F. Supp. 3d 182 (S.D.N.Y. 2018). The order (Dkt. 54) that William issued on 9/21/18 in that case against NYCHA confirms that he opened up that hearing to the general public to testify to him about deficient housing matters. Mr. Venturella illegally shouted at me like an irate junkyard dog on the first floor after I completed the security screening process upon entering DPM. He illegally did so on the first floor from **a)** the area where Mr. Morales illegally recorded a video of others and I on 9/21/18 with an Apple iPhone Watch personal electronics device that I previously apprised you about and as I lawfully exercised my First and Fourteenth Amendment right to walk to elevators that are located by the Worth Street entrance to DPM to take one of them to the 9th floor to attend the public court hearing to testify to William and otherwise lawfully engage in expressive association with other spectators. The fact that I lawfully ignored Mr. Venturella as I enforced my right to be left alone and not have him near me as I briskly walked to those elevators angered him enormously. After I arrived to the 9th floor, Mr. Venturella did so too shortly thereafter. He immediately began resuming his illegal shouting at me and cursed at me then in the presence of members of the public, Mr. Friedland, and Mr. Prince while I conducted myself in an entirely lawful manner. In fact, I clearly told Mr. Venturella then that he was behaving in an illegal manner and he told me that he didn't care. Mr. Friedland illegally

condoned that behavior by Mr. Venturella and fraudulently claimed that I was conducting myself in an inappropriate manner. None of what I what I just discussed about illegal and otherwise abusive behavior by Mr. Venturella and Mr. Friedland is in the USMS reports that I included with my 11/30/21 filing about that 9/26/18 incident because Mr. Venturella, Mr. Friedland, and the USMS illegally covered that up as the opted to predictably scapegoat me instead. This is in spite of the fact that Mr. Venturella indisputably subjected me to criminal obstruction of justice then through such illegal intimidation tactics. The USMS also illegally didn't provide me the video recordings from its video security cameras in DPM from 9/26/18 that would have shown Mr. Venturella's behavior towards me on the first floor and ninth floor in DPM. The USMS was legally required to have preserved those video recordings partly because they certainly were highly probative and incontrovertible evidence that would be beneficial to me for use in both K1 and K2 to establish the material fact that CSOs were actually illegally provoking me and behaving aggressively towards me inside of DPM while creating public disturbances instead of vice versa. Those video recordings from 9/26/18 most likely would corroborate what I just discussed as a result of what would be shown in them about Mr. Venturella's demeanor and aggressive behavior towards me towards me. The USMS didn't provide me those video recordings in furtherance of its illegal cover-ups. You and other judges have illegally and pretextually countenanced this all along while scapegoating me too.

        2)      Freely, and fully testifying to matters that were pending in them. What I just discussed applies to this partly because Mr. Venturella illegally tried to prevent me from being able to lawfully exercise my right to freely walk to the 9/26/18 court hearing in DPM while not being stalked by him as I sought to have that time to myself largely to focus on what I talk to William about during that hearing instead of an armed thug like Mr. Venturella distract

me partly by his mere and completely unwarranted presence near me. The material fact that no one else who testified to William during that hearing cements the fact that I was legally entitled on First, Fifth, and Fourteenth Amendment grounds to be left alone while I attempted to lawfully walk from the first floor in DPM to an elevator to take it to the ninth floor to testify to William and lawfully talk with other spectators during that hearing. The following information is about 2 additional instances I which CSOs illegally conspired with USMS personnel to illegally block me from freely and fully testifying to matters that were pending in litigation in which I was a participant:

a)      A CSO who stalked me to the conference that I had with Gabriel on 10/31/19 in K7 illegally attempted to impede my ability to attend and freely, fully, and truthfully talk with Gabriel then by trying to block me from entering the courtroom in which that conference was held by telling me that I couldn't enter it. However, I ignored him and did so anyway as I then promptly told a Black female court clerk about the fact that that CSO had just tried to block me from attending that conference. She then told that CSO that I was required to attend that conference. The fact that I attended that conference doesn't change the fact one bit about the fact that that CSO illegally attempted to block me from freely and fully talking with Gabriel during that conference from which a written transcript was prepared.

b)      A CSO in the security screening area in DPM on its first floor illegally attempted to impede my ability to attend and freely, fully, and truthfully talk with Robert during the conference that I had with him in K6 on 12/14/21 by intentionally and needlessly delaying my ability to complete the security screening process upon entering DPM on that date. That CSO illegally refused to promptly hand a chip to give to other CSOs in exchange for my cell phone and laptop that I needed to drop-off to them prior to attending my conference

with Robert. I told Robert about that illegal obstruction during that conference and the written

transcript that was prepared from that conference confirms that he illegally condoned that

obstruction and harassment of me in flagrant violation of my First and Fourteenth Amendment

rights. Although I conducted myself in a lawful manner throughout the entire time that I was I

was inside of DPM on 12/14/21, I was justifiably livid throughout that conference about that

abuse and the fact that Robert, Valerie, you, and other federal judge were illegally condoning

that. In fact, prior to that conference, I submitted a legal filing in K6 in which I informed Robert

that I sought for him to cause an order to be issued against the USMS and CSOs that would

essentially get them to immediately cease and desist with regards to the USMS' crimes against

me in order for me to attend a conference with him.

       ii.     While I have been a plaintiff in federal court litigation partly in K7 that I

commenced on 4/26/18, more than 2 CSOs and USMS personnel certainly conspired to do the

following partly while I sought to lawfully testify in the 9/26/18 public court hearing that

William conducted that I discussed earlier:

       1)     Impede, hinder, obstruct, and defeat the due course of justice in

New York State and inside of the federal courthouses in New York City while they intended to

deny me (a U.S. citizen) the equal protection of the laws. The following lists some of the ways

that they did so:

       a)     They did so partly by sabotaging my rights to fair trials in

federal court litigation of mine. They did so partly by greatly, illegally, and pretextually

increasing the risks that people that partly include potential jurors in litigation of mine would be

prejudiced against me by subjecting me to stigmatization. That has been done partly by publicly

displaying images of my face and my name on tablet computer screens inside of federal

courthouses both inside of security screening areas in them and elsewhere outside of courtrooms that jurors and others that include journalists, witnesses, attorneys, law school professors, law school students, paralegals, politicians walk through and past that brought them in close proximity to those tablet computer screens while they have been positioned in ways that have enabled the public to clearly see what was shown on them as the faces of others and their names were also shown on them as part of what has seemed to be a USMS watchlist. By displaying that information about me to the public and otherwise possessing it, the USMS and CSOs have illegally violated my privacy rights, equal protection rights, and due process rights. They also subjected me to illegal public-shaming by doing so. CSOs and the USMS violated the 1/23/20 sealing order in K5 both by possessing and displaying an image of me that was from K5 after that sealing order was issued. Given the fact that the USMS certainly must have received the image of my face that was from K5 from the NYPD because the NYPD was the custodian of that image, this means that the USMS illegally conspired with the NYPD in a way that sabotaged my rights to a fair trial in K6. This is because K6 was a countersuit about K5.

        b)     They also did so partly by illegally provoking me in a variety of other ways inside of federal courthouses in New York City. Such ways have included:

        i)     Dropping my laptop, cell phones, and USB thumb drive on the ground while I needed them for use partly for litigation purposes. A male CSO whose last name is Larsen both illegally dropped a USB thumb drive of mine on the ground inside of TM on 5/24/22 before he criminally threatened to punch me in my face in response to an entirely valid complaint that I made to him about having illegally dropped my property as he illegally discriminated against me by doing so on account of the material fact that he certainly hadn't dropped the property of every other visitor who visited TM on that date. I have always

had a clear legal right to have all property of mine that I have given to CSOs inside of federal courthouses for safekeeping upon entering them to be handled with the exact same level of care as every other visitor to those courthouses. As a reminder, when Mr. Larsen dropped that property of mine on 5/24/22, he did so in the exact same area where a different CSO illegally dropped my laptop on the ground on 2/27/18.

ii)      Illegally not preserving nor providing me video recording evidence from video security cameras that the USMS controls that are installed inside of and near federal courthouses in New York City. The USMS has done so in furtherance of a cover-up with respect to multiple video recordings that were recorded on multiple dates and by multiple video security cameras. Such criminal obstruction of justice pertains to video recordings that were recorded partly in DPM and TM as well as the Brooklyn federal courthouse partly on 2/27/18, 3/13/18, 3/14/18, 6/11/18, 9/26/18, 6/29/21, 5/24/22, and 12/22/22.

iii)      Lying to me in a letter dated 5/30/18 that was sent to me by USMS personnel in which a claim was made that the USMS provided me video recordings that were recorded on 3/13/18 and 3/14/18 inside of DPM by video security cameras that the USMS controls.

iv)      Illegally recording a video of me on 9/21/18 inside of DPM by using an Apple iPhone Watch personal electronics device Mr. Morales did so then while the facial expression that another CSO exhibited then strongly suggests that he appeared to be aware that Mr. Morales was recording that video.

v)      Materially and substantially lying about me to the USMS and in USMS investigative reports as well as lying about me to Intercon. That was done in furtherance of a cover-up. Among other things, such lying caused me to be subjected to the

USMS' crimes that partly include my having been maliciously prosecuted in the related cases of
K2, K3, and K4

        vi)    Illegally inducing Roseanne Dempsey to illegally be
paranoid about me on 12/6/19 as she illegally violated my First and Fourteenth Amendment
rights by refusing to provide me a public record in the form of a public court filing for roughly
45 minutes inside of the Records Management office on the third floor inside of DPM strictly
because no CSO was then in that room with us. I previously apprised you about this and you
illegally condoned that after she told me then that her refusal to provide me service then was
strictly because she had grown used to seeing CSOs stalk me in that room and no CSO was then
in that room with me. I was legally entitled to prompt service by her just like any other visitor to
that room without needing any CSO in that room for that. The material fact that Ms. Dempsey's
behavior towards me changed strictly because of how CSOs were treating me cements the fact
that you certainly needed to intervene on my behalf in K1 to immediately end the USMS' crimes
against me partly to cause absolutely no one besides CSOs and USMS personnel inside of a
federal courthouse to treat me differently than others (i.e. potential jurors, journalists, attorneys,
court clerk, and judges) who visited those courthouses on account of their observations of how
CSOs and the USMS treated me.

        vii)    Illegally seizing and assaulting me inside of federal
courthouses in New York City that among other things illegally increased my risks of being
infected with Covid-19, bronchitis, the flu, and other contagious diseases that would certainly
obstruct my ability to attend to matters in litigation of mine if I became infected with any of that
partly by draining my energy and shifting my attention to other matters.

viii)      Illegally engaging in disruptive chit-chat and having the radio devices that CSOs were equipped with squawk loudly near me partly at times while I was engaging in legal research inside of federal courthouses partly by using public computers to read court filing that include lengthy transcripts. The point here is that I had a clear legal right to be able to read those court filings in a relatively quiet environment there that others could do by not also being stalked by CSOs in those buildings. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966) and *In re Snyder*, 472 U.S. 634, 105 S. Ct. 2874, 86 L. Ed. 2d 504 (1985) that I discussed earlier that buttress this point.

iii)      While I have been a plaintiff in federal court litigation partly in K7 that I commenced on 4/26/18, more than 2 CSOs and USMS personnel certainly conspired to injure me[2] and property of mine for lawfully enforcing and attempting to enforce my rights to the equal protection of the laws as they did so in ways that include what I have discussed above.

26.    What I discussed above as well as the following facts confirm that you lied in the footnote section on page 11 of your 1/19/23 dismissal order by claiming that none of the facts in my 6/2/22 complaint related in any way to a cause of action under 42 U.S.C. §1985(3):

a.    42 U.S.C. §1985(2) states the following:

> **(3) Depriving persons of rights or privileges**
>
> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force,

---

[2] 42 U.S.C. §1985(2) lacks text that could otherwise restrict what is meant by "to injure" in the text of that statute. For this reason, reputational injuries, economic injuries, emotional injuries from stress and anger, and injuries from violations of one's legal rights are all covered by that statute.

> intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his
> support or advocacy in a legal manner, toward or in favor of the election of any
> lawfully qualified person as an elector for President or Vice President, or as a
> Member of Congress of the United States; or to injure any citizen in person or
> property on account of such support or advocacy; in any case of conspiracy set
> forth in this section, if one or more persons engaged therein do, or cause to be
> done, any act in furtherance of the object of such conspiracy, whereby another is
> injured in his person or property, or deprived of having and exercising any right
> or privilege of a citizen of the United States, the party so injured or deprived may
> have an action for the recovery of damages occasioned by such injury or
> deprivation, against any one or more of the conspirators.

b.    What I discussed above other facts that I will present next confirm that a diligent

and entirely objective review of 42 U.S.C. §1985(3) and the information in my 6/2/22 complaint,

my 11/30/21 filing, and other filings that I have filed in K1 establishes the fact that I sufficiently

asserted valid claims pursuant to 42 U.S.C. §1985(3) in my 6/2/22 complaint. This is true partly

because CSOs, USMS personnel, you and other federal judges through your acts and omissions

certainly have indisputably been co-conspirators to different degrees and in different ways that

have proximately caused me to be deprived directly and otherwise of the equal protection of the

laws as well as equal privileges under the laws.

27.    The fact that you and other federal judges illegally haven't issued an order to cause the

USMS and CSOs to stop displaying images of my face and my name in a public manner inside

of federal courthouses in New York City partly in security screening areas in flagrant violation

of my privacy rights and my clear right to calm and serenity inside of courthouses only serves to

provoke me, justifiably anger me, stigmatize me, and sabotage my right to fair trials in litigation

of mine confirms that you and other federal judges have been and remain co-conspirators of

USMS personnel and CSOs while being part of a scheme to provoke me and sabotage my First

Amendment right to fair trials in litigation of mine. The display of my face and name on those

screens has always violated 18 U.S.C. §1509 and 5 U.S.C. §552a(e)(7); findings in **a)** *Carpenter*

*v. US*, **b)** *Sheppard v. Maxwell*, **c)** *Picard v. Magliano*, **d)** *In Re Snyder,* and **e)** *Baldwin County Welcome Center v. Brown*; prohibitions against compelled association with others and compelled expression; and the terms of the USCOC. In fact, 28 U.S.C. §6135 prohibits that practice inside of SCOTUS' building and on its grounds. The fact that the judiciary is an agency (see *United States v. Rodgers*, 466 U.S. 475, 104 S. Ct. 1942, 80 L. Ed. 2d 492 (1984)) and *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009) confirms that agencies must act consistently and follow their own rules necessarily confirms that **a)** the USMS and CSOs always were prohibited from displaying an image of me and my name on tablet computer screens inside of federal courthouses and **b)** you and federal judges have illegally let them do so.

28.     One of the images of my face that has been displayed on tablet computer screens inside of federal courthouses in New York City partly in security screening areas is from the video recording that the City Council arranged to be recorded of the public hearing that many members of the public that included me conducted remotely on 6/9/20 with members of the City Council for its Committee on Public Safety. Throughout that hearing, others and I testified against the NYPD's mafia partly about it gangsters' terrorism against members of the public across New York City partly during the Summer of 2020 that the ongoing class-action lawsuit of *In Re: New York City Policing During Summer 2020 Demonstrations,* No. 20-cv-8924 (CM) (GWG) (S.D.N.Y.) is about. Guess how many images of the faces of the plaintiffs in that case have been shown on tablet computer screens inside of federal courthouses in New York City partly in security screening areas following that public hearing? Although I can't say for certain, my bet is that none of them have and that fact has been and remains a flagrant violation of my equal protection rights as well as my right to prohibitions against discrimination, abuse of process, and

selective-enforcement. Those plaintiffs and I certainly are similarly-circumstanced people. It's objectively reasonable to believe that the majority of us attended demonstrations during the Summer of 2020 in New York City against the NYPD's mafia. Its criminals masquerade as law-enforcement personnel like Mr. Morales, other CSOs, and the USMS personnel on days besides Halloween prior to becoming CSOs and mouthing off like Mr. Morales stupidly did in a video that he recorded of himself in March of 2021 as he urged the NYPD's mafia to let you and others in New York City burn. I'm referring to a Twitter posting that was posted on 3/30/21 that is available at https://twitter.com/BidenShotMyLeg/status/1376695660477562886 that includes a video that shows Mr. Morales in it. The following is a screenshot from that video:



29.     Mr. Morales is shown and clearly heard in that video as he ranted while seditiously urging those who worked for the NYPD's mafia to **a)** "don't do shit" and **b)** "let the City burn"

as he was referring to New York City by that remark. These facts about him retrospectively confirm that it has always been criminal negligence by everyone who has allowed him to be a CSO both before and after I legally whipped him, other CSOs, the USMS, and the USAO by virtue of K2's dismissal. It doesn't require much intelligence and common sense to reach the rational conclusion that anarchists that include Mr. Morales have absolutely no business being employed as a CSO nor in any other job in the law-enforcement nor security industry.

30.      You lied by omission on page 12 by suggesting that that my civil RICO claims in K1 were insufficient to proceed to discovery to enable me to have further information with which to better articulate and substantiate those and other claims of mine in K1. My civil RICO claims certainly weren't too conclusory. Moreover, I could have also submitted a further amended complaint to further articulate civil RICO claims in greater detail to cure a pleading deficiency. However, you biasedly and prejudicially refused to let me do so by pretextually subjecting me to obstruction of justice in your capacity as an obsequious cat's paw for the defendants and their attorneys. I'm entitled to plead upon information and belief prior to reaching the discovery stage and I did so. The following excerpt from *Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506 (S.D.N.Y. 1997) confirms that I was entitled to plead upon information and belief:

> "It is well-established that a plaintiff may plead on information and belief when facts are peculiarly within the defendant's knowledge, so long as the plaintiff alleges the facts on which such belief is based. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Clearly, the precise time, place, and speaker of the many false statements allegedly made by MetLife personnel from 1957 to 1995 are matters peculiarly within MetLife's knowledge."

31.      On page 12, you committed fraud on the court and against me by omitting the material fact that you arbitrarily and capriciously refused to exercise supplemental jurisdiction of state tort claims of mine in K1. You did so in defiance of FRCP Rule 1's stated purpose, your duty to

accord me special solicitude, the USCOC, my First and Fourteenth Amendment rights, and judicial economy.

32.     You lied on page 13 by suggesting that my claims against the City of New York for violating the sealing order in K5 by enabling the USMS and CSOs to continue to have and publicly display an image of my face from K5 inside of security screening areas in DPM and TM after K5 was sealed and dismissed wasn't a valid claim in K1. Contrary to your lie about that, that was part of the USMS' crimes against me. As the custodian of that image of me in K5, the City of New York was responsible for making certain that the USMS and CSOs wouldn't continue to possess nor use anything from K5 after K5 was sealed. Furthermore, though I may have inadvertently not listed the City of New York as a defendant in my 6/2/22 filing in K1 for causes of action that I asserted in K1, that certainly is a curable defect by submitting a further amended complaint. This confirms that you arbitrarily and capriciously refused to comply with FRCP Rule 15 to let me do exactly that.

33.     You lied on page 13 by fraudulently not acknowledging that I had valid claims for defamation against the ABA and NYU on account of the fact that both of them republished the defamatory information about me that Mr. Hall wrote. It's well-settled that those who republish defamatory content are liable for that.

34.     You lied on page 13 yet again by fraudulently claiming that Mr. Hall's remarks about me were strictly recitations of the events leading to the illegal arrest of me on 8/8/18. Contrary to your lie and as I clearly and previously pointed out to you, Steven never claimed nor suggested that that 8/8/18 incident occurred outdoors. Mr. Hall did exactly that and that is defamation. Steven pointed out that the 8/8/18 incident occurred inside of DPM near elevators. Mr. Hall stated that it occurred outdoors and that he relied on Steven's 6/4/19 order as the source of his

information about that. The fact you have utterly failed and/or refused to accept this cements the

fact that you never had any business with being assigned to K1 due to such bias and/or

incompetence that certainly was and remains extremely and unduly prejudicial to me. The next

screenshot is from the bottom of page 1 of Steven's 6/4/19 order in K2 and confirms that Steven

confirmed there that the 8/8/18 incident occurred near elevators while he irresponsibly used the

word "at" instead of "inside of" to specify the location of that incident. Nevertheless, this

information in that 6/4/19 order makes it clear that that 8/8/18 incident didn't occur outdoors

largely because there aren't elevators on the outside of DPM. Those elevators are instead inside

of DPM. Attention to detail and location matters a lot.

> This case arises from an incident involving Defendant and a Court Security Officer
> ("CSO") at the Daniel Patrick Moynihan United States Courthouse in New York, New York.
> According to the Government's Complaint, ECF No. 1-1:
>
>> On or about August 8, 2018, TOWAKI KOMATSU, the defendant, saw CSO-1 in
>> plainclothes outside the elevator bank at the Daniel Patrick Moynihan United States
>> Courthouse at 500 Pearl Street, New York, New York. CSO-1 was on his way to

35.     You further lied on page 13 by claiming that Mr. Hall's remarks about me were a matter

of public record. Since it was never reported in K2 that the 8/8/18 incident occurred outdoors,

this confirms that you lied about that.

36.     You lied by omission on page 14 by fraudulently refusing to acknowledge the fact that

the ABA and NYU both republished the defamatory remarks about me that Mr. Hall wrote while

doing so caused the ABA and NYU to be liable for that. The following is a relevant excerpt from

an e-mail that I sent to NYU's General Counsel on 9/14/21 that confirms that I identified the

pages in a report that NYU published on the Internet that paraphrased Mr. Hall's defamatory

remarks about me while that paraphrasing was still defamatory against me:

**From:** Towaki Komatsu <towaki_komatsu@yahoo.com>
**Subject:** Ongoing illegal defamation by New York University against me
**Date:** September 14, 2021 at 12:57:07 PM GMT+10
**To:** aisha.oliver-staley@nyu.edu

Ms. Oliver-Stayley,

My name is Towaki Komatsu.

The following is a link to a PDF file on the New York University ("NYU") Law School's web site that the American Bar Association ("ABA") published:

https://www.law.nyu.edu/sites/default/files/admin-and-regulatory-law-news-winter-2021.pdf

That report contains a republished and slightly paraphrased article that was written by a student of Duke University named Johnathan Hall about me that contains defamatory statements about me on pages 9 and 10 in that PDF file

37.      Page 9 in the report that NYU published that paraphrased Mr. Hall's defamatory remarks about me contained the following defamatory text about me that again claimed that the 8/8/18 incident occurred outdoors:

"In *United States v. Komatsu*, No. 18-cr-651, 2019 WL 2358020, at *1 (E.D.N.Y. June 4, 2019), Towaki Komatsu shouted at, and then attacked, a Court Security Officer <u>**outside of a courthouse building in New York City**</u>. After the incident was reported, Komatsu was charged with violating 40 U.S.C. § 1315 and the accompanying federal rule."

(boldface and enlarged font size together with underline formatting added for emphasis)

38.      The following excerpt from an e-mail that I received on 9/20/21 from Eric Rasmussen of NYU's General Counsel's office indicates that he confirmed that the ABA was the source of the information about Mr. Hall's defamatory remarks about me that NYU republished after the ABA did so:

**From:** Eric Pollex Rasmussen <eric.rasmussen@nyu.edu>
**Subject:** Fwd: Ongoing illegal defamation by New York University against me

**Date:** September 20, 2021 at 11:44:28 PM GMT+10
**To:** towaki_komatsu@yahoo.com
**Reply-To:** eric.rasmussen@nyu.edu

Dear Mr. Komatsu, I'm an attorney for NYU.  Our General Counsel shared your email with me and asked me to review the matter.

The ABA publication was posted by NYU Law because of another article appearing in the publication.  NYU Law did not make any statements about your case in connection with the publication or use the publication in any other manner.   NYU Law has removed the publication from its servers and so we consider this matter closed.

39.    You lied on page on page 14 by fraudulently claiming that requests for relief that I made in K1 were fanciful. Someone needs to provide proper oversight about how the USMS, CSOs, and federal judges operate. You and every other federal judge in New York City that I have dealt with have clearly confirmed that none of you are up to that task; SCOTUS' denial of my petition for a writ of certiorari in K10 confirms the same; the USMS isn't up to that task either, and CSOs aren't either. Since all of you have opted to let yourselves be incompetent in that regard, someone has to seize control to properly, continuously, and objectively perform that sorely needed function. I certainly am an ideal candidate for that role due to my dealings with the USMS and CSOs as well as those with the DOJ about that. To get good service, proper payment for such services is needed. This explains why it's entirely reasonable for me to be hired for that task and paid well for it. "The Department of Justice appears to believe that it is the sole enforcer of its regulations. That leaves the court to wonder who watches the watchmen." These were the remarks that U.S. Magistrate Judge Zia M. Faruqui made on 8/24/21 at the end of the decision that he issued in *USA v. Shroyer*, No. 21-cr-542 (ZMF) (D.C. Aug. 24, 2021) as the unmistakable point that he made then was about the lack of proper oversight of the DOJ that the USMS is a part of. Furthermore, the material fact that the USMS and CSOs have sabotaged my employment prospects partly by publicly displaying images of my face and name on tablet computer screens

inside of federal courthouses that causes me to be illegally stigmatized and suffer reputational

harm clearly warrants equitable relief to remedy that partly by causing me to be employed in a

job with proper compensation. This point is reinforced by the following excerpts from the

decision that was issued on 1/11/23 by U.S. Bankruptcy Judge Julie Manning in the case of *In*

*re: Ho Wan Kwok*, No. 22-05032 (Bankr. D. Conn. Jan. 11, 2023):

a.   "During the contempt hearing, the Chapter 11 Trustee first alerted the Court and
the Office of the United States Trustee as to the subject matter of this adversary
proceeding, namely an alleged social media and protest campaign to harass and
intimidate the Plaintiffs relating to their involvement in these cases"

b.   "At the conclusion of the TRO hearing, the Court granted a portion of the relief
sought in the Motion and entered a temporary restraining order (the "TRO").
(ECF No. 26.) The TRO restrained the Debtor from (1) posting false and
harassing materials about the Plaintiffs, their counsel, and their relatives; (2)
publishing online the home addresses and other personal information of the
Plaintiffs, their counsel, and their relatives; (3) encouraging, inciting, suggesting,
or directly or indirectly financing protests at homes and offices of the Plaintiffs,
their counsel, and their relatives; and (4) interfering with the integrity of these
Chapter 11 cases."

40.    The preceding excerpts are relevant because they're about harassment and intimidation

against a plaintiff due to litigation activity that was reported to a judge on 11/16/22 before that

resulted in the issuance of an order just one week later on 11/23/22 by a judge to end that

harassment and intimidation in stark contrast to how you and other federal judges have illegally

treated me in response to entirely valid, truthful, timely, detailed, and frequent complaints that I

have reported to all of you about illegal and otherwise abusive harassment and intimidation

against me that corresponds to the USMS' crimes.

41.    On a related note, the following are relevant excerpts from *Aristotle Psychological and*

*Biofeedback Services, PLLC v. Tenenbaum*, 2019 N.Y. Slip Op 32159 (Sup. Ct. 2019) that

address illegal acts that are committed against people that impede their ability to have a job:

a.   "Powerful considerations of public policy militate against sanctioning the loss of
a person's livelihood"

b.      "This policy is so potent that covenants tending to restrain anyone from engaging in any lawful vocation are almost uniformly disfavored, and are sustained only to the extent that they are reasonably necessary to protect the legitimate interests of the employer, and are not unduly harsh or burdensome to the one restrained"

42.     *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) similarly addresses Fourteenth Amendment liberty rights and confirms that people have a Fourteenth Amendment right to engage in any of the common occupations of life, acquire useful knowledge, and contract. Also, *Petty v. City of New York*, No. 10-cv-8581 (KPF) (S.D.N.Y. Nov. 25, 2014) states that "there is a deprivation entitled to protection" "when the challenged action effectively prohibits one from engaging in a profession, or pursuing any job in a given field".  18 U.S.C. §1513(e) states that whoever "knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both." This is exactly what CSOs and USMS personnel have been doing all along partly by displaying images of me inside of federal courthouses partly to sabotage my employment prospects by stigmatizing me. People who see those images of me certainly are much less likely to grant me a job interview for obvious reasons that aren't my fault. I certainly have often provided truthful information relating to the commission and possible commission of federal offenses to law-enforcement personnel about and against the USMS, CSOs, federal judges since March of 2018. It's equally true that USMS and CSOs as well as the USAO and federal judges have retaliated against me for doing that partly by sabotaging my employment prospects through illegal stigmatization.

43.   _Semmes Motors, Inc. v. Ford Motor Company_, 429 F.2d 1197 (2d Cir. 1970) states the

following partly about irreparable harm while these findings also support the excerpts from

_Aristotle_ that I included earlier:

    a.   "the right to continue a business in which William Semmes had engaged for
twenty years and into which his son had recently entered is not measurable
entirely in monetary terms; the Semmes want to sell automobiles, not to live on
the income from a damages award.

    b.   "they want to continue living. As Judge Goodrich said, a "judgment for damages
acquired years after his franchise has been taken away and his business obliterated
is small consolation to one who, as here, has had a Ford franchise" for many
years"

44.   _The Variable Annuity Life Insurance Company v. Coreth_, No. 3:21-cv-223 (E.D. Va. Apr.

21, 2021) similarly addresses irreparable harm by stating the following:

    a.   "irreparable harm includes "lost business, lost goodwill, and lost trust""

    b.   "Generally, irreparable harm `is suffered when monetary damages are difficult to
ascertain or are inadequate.'"

    c.   "Irreparable harm must be `neither remote nor speculative, but actual and
imminent.'"

45.   While issuing your 1/19/23 dismissal order, you prejudicially ignored the material fact

that the legal standard for being granted injunctive relief is larger in scope that how you

described that in that order. This is proven partly by the fact that _Nielsen Consumer LLC v. The_

_NPD Group_, Inc., No. 22-cv-3235 (JPO) (S.D.N.Y. May 18, 2022) states the following about

that legal standard:

    a.   "A party seeking a preliminary injunction must show "(1) `a likelihood of success
on the merits' or `sufficiently serious questions going to the merits to make them a
fair ground for litigation'; (2) `that [the plaintiff] is likely to suffer irreparable
injury in the absence of an injunction'; (3) that `the remedies available at law,
such as monetary damages, are inadequate to compensate for that injury'; (4) that,
`considering the balance of hardships between the plaintiff and defendant,' a
remedy in equity is warranted; and (5) that `the public interest would not be
disserved by the issuance of a permanent injunction.'"

      b.      "Injunctive relief "should be `narrowly tailored to fit specific legal violations' and to avoid `unnecessary burdens on lawful commercial activity.'""

46.      In addition, *Holt v. Continental Group, Inc*., 708 F.2d 87, 90 (2d Cir.1983) implicitly confirms that irreparable harm may be established "by financial distress or" an "inability to find other employment" if "truly extraordinary circumstances are shown". I have clearly established that the USMS' crimes against me are unduly prejudicial to my efforts both to be granted job interviews and job offers as a result of the fact that I'm being illegally stigmatized by the USMS' crimes. That fact and circumstance is patently sufficient for an order to be immediately issued to end the USMS' crimes and for me to be granted equitable relief that is tantamount to make-whole relief partly by ordering the USMS, Intercon, and Centerra to immediately cause me to be fully and properly employed. This is entirely logical and reasonable.

47.      *Holt v. Continental Group, Inc*. was about whether the plaintiff could be granted preliminary injunctive relief and is cited in *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F. 3d 506 (2d Cir. 2005) that includes the following relevant findings:

      a.      "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."

      b.      "To the extent that the district court implied in its order that injuries resulting from retaliatory termination are always compensable in money damages, we disagree. As we held in Holt, "[a] retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights under the [law] or from providing testimony for [a] plaintiff in [his or] her effort to protect [his or] her own rights. These risks may be found to constitute irreparable injury.""

48.      The preceding excerpts from *Moore v. Consolidated Edison Co. of New York, Inc*. conversely establish that the following is true:

      a.      Injunctive relief that includes an award of money damages is available when there isn't an adequate remedy at law and when extraordinary circumstances exist. This applies partly about the fact that CSOs and USMS personnel have been sabotaging my employment prospects

partly by **a)** causing me to have been maliciously prosecuted in K2 that led to Mr. Hall committing defamation against me in relation to that while his defamation spread to Internet and was republished and **b)** illegally stigmatizing me inside of federal courthouses in ways that cause it to be less likely that recruiters who observe that will grant me a job interview and hiring managers who observe that will offer me a job offer mainly due to risk-management practices.

      b.      Ongoing persecution of and discrimination against me as opposed to mere retaliation against me by CSOs and USMS personnel inside of federal courthouses has prejudicially and proximately caused me to substantially reduce how often I visit federal courthouses in New York City while I have sought to lawfully do so partly to protect my rights and provide testimony in an effort to protect my rights. I have largely avoided visiting those federal courthouses to avoid encountering further situations in which I would be stalked, stigmatized, insulted, seized, and/or assaulted by CSOs. Such assaults would give me the opportunity to engage in legal-defense against CSOs that could cause me to kill or severely injure them. Since those unduly prejudicial circumstances have greatly deterred me from visiting those courthouses in flagrant violation of my rights to lawfully do so without any discriminatory treatment whatsoever, that circumstance is enough to warrant the granting of immediate injunctive relief against the USMS and CSOs that would entail all of the following:

      a.      Ending the USMS' crimes against me.

      b.      Authorizing me to keep my laptop and cell phone with me throughout my visits to federal courthouses in New York City after completing the security screening process upon entering them.

      c.      Authorizing me to record video recordings, record audio recordings, and take photographs of all interactions that I have with CSOs and USMS personnel inside of those

courthouses to effectively counter a longstanding cover-up by CSOs and USMS personnel about the USMS' crimes against me.

        d.     Authorizing me to use my cell phone and laptop inside of federal courthouses in New York City to the same degree that CSOs, USMS personnel, attorneys, and journalists are able to.

        e.     Granting me a free Pacer account.

49. The preceding discussion about findings in _Moore v. Consolidated Edison Co. of New York, Inc_. establishes that when the financial consequences from illegal retaliation block or impede a plaintiff's ability to lawfully exercise his or her First Amendment right of access to the courts to petition for redress, such circumstances are sufficient for a court to immediately and decisively intervene to do all that is necessary to end such obstruction to prevent and otherwise end irreparable harm.

50. You also lied on page 14 by claiming that all of the harms that I complained of could be compensated by a monetary award as you omitted the material fact that I'm a legal guardian for a severely incapacitated parent who urgently needs far better therapeutic treatment on a continuous basis to give her the best possible chance to achieve recoveries from strokes. Time is always of the essence to achieve such recoveries for stroke victims to prevent the harm from them from becoming irreversible. _Hathaway v. Coughlin_, 99 F.3d 550 (2d Cir. 1996) confirms that "a condition of urgency" is "one that may produce death, degeneration, or extreme pain" while describing what qualifies as an objectively serious medical condition. Irreparable harm also covers delayed and/or complete lack of necessary treatment, increased pain, according to findings in _Glover v. Ryan_, No. CV-21-00676-PHXROS (CDB) (D. Ariz. July 1,2021) and _JonesEl v. Berge_, 164 F. Supp. 2d 1096 (W.D. Wis. 2001). Irreparable harm also is a loss of First

Amendment freedoms even for a minimal amount of time. Prior to passing away, a stroke victim named Harvey Alter had the same medical condition as my Mom from strokes that is known as aphasia as a video that is available at https://www.youtube.com/watch?v=F_5verIbj8 was recorded of him years after his strokes while he effectively gave a speech to an audience and discussed the hard work he engaged in to achieve such substantial recoveries from his stroke. This means that my Mom can still achieve recoveries from her strokes. She just needs this judges that include you to stop playing games and instead immediately grant me substantial injunctive relief, partial summary judgment, and monetary sanctions partly against the USMS, CSOs, and Duke University that will enable me to have the resources to get her the resources partly with respect to intensive and continuous speech and physical rehabilitation therapies that she needs to give her the best shot of recovering from her strokes.  Moreover, my Mom isn't the only person who is close to me who urgently needs continuous and intensive medical care. I'm not going to disclose in a public legal filing who that person is and what that person needs in terms of medical treatment for obvious reasons about privacy rights. I'm also not going to otherwise disclose that information to the defendants nor their attorneys. I may however submit such information strictly under seal and for this Court's eyes only. The findings in *Sheppard v. Maxwell* and *Picard v. Magliano* that I discussed earlier together with the USCOC and the following findings from *Ingraham v. Wright*, 430 U.S. 651, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977) sufficiently confirm that you're legally required to issue an immediate injunction to end the USMS' crimes against me:

> "Among the historic liberties so protected was a right to be free from, and to obtain
> judicial relief for, unjustified intrusions on personal security"

51.     The 10/14/22 decision in _Coakley v. Berger_, 2022 N.Y. Slip Op 51014 (Sup. Ct. 2022)

contains the following findings that further reinforce this point partly on account of the material

fact that CSOs and USMS personnel conspired and colluded together to cause me to be

maliciously prosecuted in K2 and thereafter persisted in committing the USMS' crimes against

me after I legally whipped CSOs, the USMS, and USAO by virtue of K2's dismissal:

     a.     "the courts will not permit litigation caused by or based on "bad feelings"
        between parties."

     b.     Nor will litigation be permitted to be pursued for such "improper purposes."
        (_Gordon v Marrone_, 202 AD2d 104, 105 [2d Dept 1994] [affirming that
        "[l]itigants who use our court system for improper purposes, such as for
        retribution and harassment, may be sanctioned under the rules designed to deter
        frivolous conduct"]; _see also Matter of Sud v Sud_, 227 AD2d 319, 319 [1st Dept
        1996] [upholding imposition of sanctions "to prevent use of the judicial system as
        a vehicle for harassment, ill will and spite"].)

52.      41 C.F.R. §101-20.002-1(b) states that the "GSA will ensure that space assigned to

agencies is safe and that employees and visitors are not exposed to unnecessary risks" and 41

C.F.R. §101-20.002-1(d) states that the "GSA will make every effort to provide or arrange for a

reasonable amount of protective services to ensure the physical security of occupants and

visitors, to safeguard the Government's property interests, and to maintain order." Those

regulations are about the GSA's legal duty to make certain that sufficient security is available in

federal government buildings that include DPM, TM, and the Brooklyn federal courthouse.

Hindsight confirms that the GSA has prejudicially not performed that duty to my detriment as a

result of the USMS' crimes against me that proximately induced a court clerk Roseanne

Dempsey to illegally not provide me public records in DPM for roughly 45 minutes on account

of her paranoia about the fact that a CSO wasn't in the Records Management office in DPM

while I was conducting myself in an entirely lawful manner while I requested public records that

corresponded to a legal filing that was publicly filed in a court case. I previously apprised you

about that incident with Ms. Dempsey and you illegally condoned that in spite of the fact that her behavior certainly violated my First and Fourteenth Amendment rights. By condoning that then, you demonstrated clearly partiality in favor of her that required your immediate recusal from K1 before that same prohibited partiality revealed itself in your 1/19/23 dismissal order while that prohibited partiality then was favoritism for CSOs and the USMS. Since the following is entirely true, these facts and circumstances further support my requests for an immediate injunction to end the USMS' crimes against me:

    a.    The GSA prejudicially hasn't performed its duties pursuant to 41 C.F.R. §101-20.002-1(b). As a result, I haven't had a reasonable amount of protective services inside of federal courthouses in New York City since 2/27/18 both to ensure my security in them from CSOs and USMS personnel and to maintain order by preventing them from engaging in disruptive behavior.

    b.    The GSA prejudicially hasn't performed its duties pursuant to 41 C.F.R. §101-20.002-1(d). As a result, I certainly have been exposed to unnecessary risks inside of DPM, TM, and the Brooklyn federal courthouse that partly include the illegal assaults, seizures, and verbal harassment of and otherwise against me by CSOs as well as stigmatization of me by CSOs and USMS personnel by illegally and publicly displaying images of my face and name on tablet computer screens. That practice illegally sabotages my right to fair trials in litigation of mine by subjecting me to illegal public shaming and enormous provocation. That public shaming naturally prejudices the minds of people that include potential jurors in litigation of mine partly by fraudulently causing them to think that I did something wrong to be shown on those screens and stalked by CSOs inside of those courthouses instead of having legally whipped CSOs, the USMS, and USAO by virtue of K2's dismissal.

53.     41 CFR §102-74.380(d) points out that everyone who enters in or on federal property that includes DPM, TM, and the Brooklyn federal courthouse are prohibited from creating any hazard on such property to persons or things. That regulation doesn't exempt CSOs, USMS personnel, judges, court clerks, and others from its terms.

54.     41 CFR §102-74.385 points out that everyone who enters in or on federal property that includes DPM, TM, and the Brooklyn federal courthouse must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of federal police officers and other authorized individuals. That regulation doesn't exempt CSOs, USMS personnel, judges, nor court clerks from that duty to comply.

55.     41 CFR §102-74.390 points out that everyone who enters in or on federal property that includes DPM, TM, and the Brooklyn federal courthouse are prohibited from loitering, exhibiting disorderly conduct, and exhibiting other conduct on such property that **a)** creates loud or unusual noise or a nuisance; **b)** unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, and stairways; **c)** otherwise impedes or disrupts the performance of official duties by Government employees; and **d)** prevents the general public from obtaining the administrative services provided on the property in a timely manner. That regulation doesn't exempt CSOs, USMS personnel, judges, nor court clerks from having to comply with this regulation.

56.     41 CFR §102-74.415 points out that everyone who enters in or on federal property that includes DPM, TM, and the Brooklyn federal courthouse are prohibited from:

a.      Posting or affixing materials that partly consist of pamphlets, handbills, and flyers on bulletin boards and elsewhere in and on such GSA-controlled property, except as authorized

**a)** in 41 CFR §102-74.410 or **b)** when those displays are conducted as part of authorized Government activities instead of unauthorized, pretextual, and illegal activities.

    b.    Distributing materials that partly consist of pamphlets, handbills, and flyers in and on such GSA-controlled property, unless the occurs under the following conditions:

        i.    That is done as part of authorized Government activities instead of such pretextual and illegal activities.

        ii.    That is done in public areas of the property as defined in 41 CFR §102-71.20 and whoever does so **a)** first obtains a permit from the building manager as specified in subpart D of that part and b) distributes materials only in accordance with the provisions of subpart D of that part.

57.    41 CFR §102-74.450 points out that anyone who is found guilty of violating any rule or regulation in that subpart while on any property under the charge and control of GSA shall be fined under title 18 of the United States Code, imprisoned for not more than 30 days, or both. CSOs, USMS personnel, judges, court clerks, and others aren't exempt from this.

58.    41 CFR §102-74.455 points out that no rule or regulation in that subpart may be construed to nullify any other Federal laws or regulations or any State and local laws and regulations applicable to any area in which the property is situated.

59.    *Singh v. US Dept. of Justice*, 461 F.3d 290 (2d Cir. 2006) is controlling law and contains the following findings that apply to what I just discussed:

    a.    "agencies are bound to follow regulations on which individuals justifiably rely"

    b.    "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."

    c.    "the Supreme Court has held that an administrative agency must adhere to its own regulations."

60.     While it's possible that I may eventually be granted monetary damages for my claims in K1 following appeals of K1, receiving such damages only then can't possibly remedy my inability get things done when they need to be done both for family members and myself. A time machine won't exist to let me turn the clock back and have sufficient funds to retain legal counsel for use partly for pending petitions for writs of certiorari to SCOTUS for litigation of mine that are due in March and May of this year. In contrast to pro se appellants, those who are represented by counsel and otherwise are attorneys are authorized to electronically submit legal filings to SCOTUS. I have already learned from petitions for writs of certiorari that I mailed to SCOTUS' clerk's office that the personnel of that clerk's office unlawfully discriminate against pro se appellants by not accurately scanning legal filings that pro se appellants submit to that clerk's office in instances in which such filings contain images? In particular, nearly all of the images that I included in my petition for a writ of certiorari for K10 are shown in an extremely distorted manner in the PDF file that was created by SCOTUS' court clerk's office when it scanned the petition for a writ of certiorari for K10 that I mailed to it prior to uploading that to SCOTUS' web site. That petition is available on SCOTUS' web site at

https://www.supremecourt.gov/DocketPDF/22/22-5681/238777/20220926145359471_20220926-144306-00003601-00011766.pdf. Every single image in the petition for a writ of certiorari for K10 that I mailed to SCOTUS' clerk's office was clearly shown in that printout. In contrast, the images that are shown on pages 35, 37, 38, 39, 42, 43, 44, 47, 49 in the PDF file that SCOTUS' court clerk's office uploaded to SCOTUS' web site are shown in a very distorted, washed-out, and opaque manner.

61.     In contrast to what I just discussed, SCOTUS has included images that are clearly shown in both **a)** decisions that it has issued and **b)** legal filings that attorneys have submitted to

SCOTUS in connection with petitions for writs of certiorari. For example, the first screenshot shown next is of the image that appears on page 6 in the PDF file for SCOTUS' decision in *Egbert v. Boule*, No. 21-147 S. Ct. (U.S. Jun. 8, 2022). The screenshot after this one is from page 18 in the PDF file for the amicus brief of a group named "Western Urban Water Coalition" that was filed with SCOTUS on 4/18/22 for the ongoing appeal that is filed with SCOTUS that corresponds to *Sackett v. Environmental Protection Agency*, No. 21-454 (U.S.). That amicus brief is available at https://www.supremecourt.gov/DocketPDF/21/21-454/221279/20220418135504854_21-454tsacTheWesternUrbanWaterCoalition.pdfA.pdf. The point here is that I clearly had a First and Fourteenth Amendment right to have every single image in my petition for a writ of certiorari for K10 to be as clearly shown on SCOTUS' web site as these two images[3].



---

[3] In case the second of these 2 images that is from *Sackett* is shown in black and white when you receive this legal filing, that will be as a result of how the Pro Se Intake Unit's staff may possibly scan this legal filing strictly in black and white. That image actually is shown in color in the legal filing that I'm submitting.



62.     The reasons why I included images in my petition for a writ of certiorari for K10 were partly to try to attract the interest of people who would then see that information clearly on SCOTUS' web site before they would possibly decide to **a)** submit amicus briefs in K10 and K1; **b)** offer to provide me pro-bono legal representation partly for K10 and K1; **c)** provide news coverage in the press and otherwise partly about K10 and K1 through word-of-mouth advertising partly on social media platforms and in conjunction with law school classes and debates; **d)** donate funds for a crowd-funding initiative to help me to pay for the costs of appealing K10, K1, and other litigation of mine; and **e)** donate other useful resources that include free printing and mailing services and/or the use of legal observers to accompany me during my visits to federal courthouses to facilitate my ability to attend to legal matters in K10, K1, and other litigation of mine. The fact that _Taucher v. Rainer_, 292 F. Supp. 2d 111 (D.C. 2003) points out that "cases raising constitutional issues attract _amici_ participation", my claims in K10 and K1 certainly were

about major constitutional issues confirm that K10 and K1 were and otherwise remain prime

candidates to benefit from the submission of amicus briefs in K10 and K1 in support of my

claims. In fact, _Rumsfeld v. Forum for Academic and Institutional Rights, Inc._, 547 U.S. 47, 126

S. Ct. 1297, 164 L. Ed. 2d 156 (2006) points out that the following about expressive association

as this also applies to jointly litigating an appeal with the benefit of amicus briefs:

    a.    "We have recognized a First Amendment right to associate for the purpose of speaking, which we have termed a "right of expressive association."

    b.    "The reason we have extended First Amendment protection in this way is clear: The right to speak is often exercised most effectively by combining one's voice with the voices of others."

    c.    "If the government were free to restrict individuals' ability to join together and speak, it could essentially silence views that the First Amendment is intended to protect."

63.    Furthermore, a monetary award that I may possibly receive later can't adequately provide

me a remedy that I urgently need right now to have a mandamus writ issued to fire essentially

force Edgardo to recuse himself from K11 partly in response to prohibited bias and prejudice

against me that he has demonstrated in K11. He has done so partly by ignoring all of my filings

in K11 between February of 2022 and January of 2023. I need an attorney for that too after

Edgardo illegally caused my complaint in K6 to be struck as a result of the order that he issued

on 1/5/21. He did so in K11 in spite of the fact that he never was assigned to K6 and never had

any jurisdiction to do that. Moreover, I need medical treatment for various things that include

major dental treatment. That fact and circumstance further confirm that I am entitled to

immediate monetary sanctions as well as immediate partial summary judgment to be able to

promptly attend to such medical issues and end pain that is associated with that. Much of the

medical treatment that I need isn't covered by insurance and is expensive. Extreme stress has a

way of exacerbating existing health problems and the USMS' crimes against me have done precisely that.

64.     You previously stated the following in your 10/22/22 order in K1 that you wouldn't hesitate to grant me relief in K1 if I proved my claims in K1 if I proved my claims in K1:

> "Several of Plaintiff's recent letters ask the Court to grant him immediate injunctive relief. Additionally, Plaintiff's October 17, 2021, letter asks the Court to compel Defendants to fund his travel expenses to Japan. Plaintiff makes these requests apparently on the assumption that his allegations against Defendants have been proven. However, no relief can be granted without Plaintiff proving his allegations. For this reason, Plaintiff's requests for immediate relief are denied."

65.     I still need to immediately travel to Japan to finally be able to properly grieve for a long time about my father's passing there and to thank everyone who looked after him there. It's unconscionable that you've opted to defy the law of the case doctrine about this now by essentially shoving the goal posts back.

66.     While acknowledging the fact that remarks that I made in legal filings in K1 were offensive, you committed fraud on the court by fraudulently omitting the material fact that such offensiveness was provoked by the USMS' crimes against me in addition to the material fact that you and other judges illegally refused to intervene on my behalf to end the USMS' crimes against me. As a result, you had no grounds to complain about offensiveness in my remarks in legal filings in K1 nor any other litigation of mine because such remarks were a reflection of remarks to me by CSOs and the fact that you and other judges despicably didn't intervene on my behalf about that. _Rogers v. City of Detroit_, 579 N.W.2d 840, 457 Mich. 125 (1998) directly addresses and support this point by stating that language "unbecoming a court officer imperils the decorum that courts must maintain." In a similar vein, _Grayned v. City of Rockford_, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) is controlling law that points out that a "vague law impermissibly delegates basic policy matters to" law-enforcement personnel that include judges,

CSOs, and USMS personnel "for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Furthermore, you can't validly chastise me about offensive remarks by me on account of the material fact that Colleen just dropped a fuck-bomb in open court last week without any objectively valid grounds whatsoever while the very same rules about proper decorum are equally applicable to judges. I'm referring to a news article that a trashy whistleblower news censor in journalism that I've met named Graham Rayman wrote for the New York Daily News censorship business that is entitled "Federal Judge F-Bombs Correction Department, NYC Officials for Withholding Information in Rikers Island Case". That article was published on 4/4/23 and is available at https://www.nydailynews.com/new-york/nyc-crime/ny-rikers-illegal-detention-lawsuit-louis-molina-colleen-mcmahon-20230203-3ytoboozonfs7i4xfwbicvnl6u-story.html. The following is a relevant excerpt from that article:

> "There's no mistaking Manhattan Federal Judge Colleen McMahon's dislike of city Department of Correction stonewalling — ire she says has been building over her 24 years on the bench.
>
> "There is no agency that ... has been a more troublesome litigant in terms of, and you will excuse my language, 'F--- you, judge, I'll do what I want' in that period than DOC," McMahon said in open court on Friday.
>
> McMahon spoke during proceedings in a class action lawsuit over conditions and illegal detentions at Rikers Island. She prefaced her profane remark by stating: "I just want to lay my cards on the table in a manner that impresses everyone with how seriously I take this."
>
> Her frustration was aimed at Correction Department general counsel Paul Schechtman and city Corporation Counsel Sylvia Hinds-Radix over the city's failure to promptly provide information on the identities of staffers who may be involved in the lawsuit's allegations."

67.    While it certainly would be a different story if Colleen had repeated someone else's remarks and otherwise read from something when she used profanity during the court hearing that is discussed in that article, that wasn't the situation when opted to violate rules of decorum

to express her frustration. *Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010) contains the following

findings that confirm that you may adopt findings that are issued by federal judges who are

assigned to courthouses that are located beyond this judicial circuit:

> "Even if this or other circuit courts have not explicitly held a law or course of conduct
> to be unconstitutional, the unconstitutionality of that law or course of conduct will
> nonetheless be treated as clearly established if decisions by this or other courts
> "clearly foreshadow a particular ruling on the issue," *Varrone v. Bilotti*, 123 F.3d 75,
> 79 (2d Cir.1997) (internal quotation marks omitted), even if those decisions come
> from courts in other circuits, *see, e.g., id.; Weber v. Dell*, 804 F.2d 796, 801 n. 6, 803-
> 04 (2d Cir.1986)"

68.    *Sevy v. Barach*, No. 17-13789 (E.D. Mich. Aug. 5, 2019) contains the following finding

that the Sixth Circuit affirmed on appeal:

> "In giving voice to his criticism, Sevy was free to employ profanity to articulate his
> message."

69.    *Sevy v. Barach*, No. 17-13789 was about the fact that a visitor to a courthouse was

criminally assaulted by court officers when he visited that courthouse to try to pay a ticket with

pennies. That assault by court officers was recorded on video.  That video is shown in a news

article that is entitled "Lawsuit: Man Choked By Court Officer After Trying to Pay Ticket in

Pennies" that a news organization named SFGate published on 11/30/17. That article is available

at https://www.mynbc5.com/article/lawsuit-man-choked-by-court-officer-after-trying-to-pay-

ticket-in-pennies/13985353. Mr. Sevy apparently used profanity while criticizing those court

officers then and did so in accordance with his First and Fourteenth Amendment right to do

precisely that there and then in the context of complaining about their behavior and courthouse

policies.

70.    The following are relevant excerpts from the decision that the Sixth Circuit issued in *Sevy

v. Barach*, No. 19-2038 (6th Cir. July 1, 2020) that reinforces what I just discussed:

a.   "Sevy's First Amendment rights to protest and criticize government officials is clearly established such that a reasonable officer would know that he could not use any force to retaliate against an individual for the exercise of that speech. Ample precedent shows that Sevy has a First Amendment right to protest, verbally and symbolically, the acts of government officials and to criticize those officials—this is not a close question. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., Inc.,* 515 U.S. 557, 569 (1995) (symbolic speech); *Cohen v. California,* 403 U.S. 15, 26 (1971) (protest in a courthouse corridor); *Greene v. Barber,* 310 F.3d 889, 895 (6th Cir. 2002) (utilizing crude language to criticize officers); *Barrett v. Harrington,* 130 F.3d 246, 264 (6th Cir. 1997) (criticizing public officials)"

b.   "He could also criticize the court officers for enforcing the processing fee and the coin rule—that, too, would be protected activity."

c.   "In short, it should not take a previous case holding that officers may not choke individuals in retaliation for their exercise of free speech, such as protest and public criticism of officers, to conclude that Sevy's rights were clearly established."

71.   The preceding information confirms that you, other federal judges, CSOs, the USMS, and the USAO all prejudicially and discriminatorily ignored the material fact that visitors to courthouses have a clear First Amendment right to criticize courthouse personnel in them partly about courthouse policies and the behavior of courthouse personnel without being retaliated against for doing so. In fact, *Hill v. Colorado*, 530 U.S. 703, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000) cites *Cohen v. California*, 403 U. S. 15, 21 (1971) and states the following to point out that it's protected First Amendment expression to use vulgar language inside of a courthouse to express opposition to a government policy:

"Even in a public forum, one of the reasons we tolerate a protester's right to wear a jacket expressing his opposition to government policy in vulgar language is because offended viewers can "effectively avoid further bombardment of their sensibilities simply by averting their eyes." *Cohen* v. *California,* 403 U. S. 15, 21 (1971)."

72.   Concerning the preceding findings, you and other judges have illegally let CSOs and the USMS bombard visitors to federal courthouses in New York City with images of me and my name on tablet computer screens without any regard whatsoever for how prejudicial that

certainly is to my right to fair trials and how provocative that is to me that explains why I have been entirely justified in constantly being absolutely livid about that illegal practice and the fact that you and other judges illegally never intervened to end that.

73.     Concerning my request to be granted authorization to display images of CSOs, members of the USMS, judges, and others on signs taped to my ass and crotch while I stand, sit, and walk inside" federal courthouses in New York City, the fact of the matter is that irrespective of how unique that request is, it's warranted due to offsetting penalties in regards to prohibitions against discrimination partly with respect to the fact that you and other judges have illegally let CSOs and USMS personnel illegally pretextually display images of my face and name on tablet computer screens inside of federal courthouses to the general public over an extended period of time while there never was any valid reason for that to be publicly displayed. The excerpt from _Grayned_ that I discussed earlier and the following findings in _RAV v. St. Paul_, 505 U.S. 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992) confirms that you're prohibited from discriminating against me by denying that request:

    a.    "St. Paul has no such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules."

    b.    "The First Amendment generally prevents government from proscribing speech, see, _e. g., Cantwell_ v. _Connecticut,_ 310 U. S. 296, 309-311 (1940), or even expressive conduct, see, _e. g., Texas_ v. _Johnson,_ 491 U. S. 397, 406 (1989), because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid."

    c.    "the government may proscribe libel; but it may not make the further content discrimination of proscribing _only_ libel critical of the government."

74.     The preceding findings are relevant because they underscore the fact that you and other judges have been prohibited from letting CSOs and the USMS publicly display images of me and my name inside of federal courthouses while prohibiting me from leveling the playing field by reciprocally doing the same in those same courthouses and of them, you, and other judges.

75.     Concerning your remarks on page 14, you clearly abused your discretion by refusing to grant me injunctive relief. I have already and clearly demonstrated irreparable harm as a result of the USMS' crimes against me on account of the material fact that the provocation of me by that proximately caused my entirely justifiable rage from that to explode. That explosion of my rage manifested itself in offensive remarks in legal filings of mine in litigation of mine and that caused K7 to be prejudicially dismissed by Judge Schofield only after she illegally chose not to intervene on my behalf about the USMS' crimes against me in response to my 7/20/18 filing in K7. Extreme and constant stress has its consequences and you're illegally continuing to end the USMS' crimes against me without any regard to the substantial and irreparable harm that has already caused me. That fact confirms that you're a criminal accomplice with USMS personnel and CSOs in that regard. This assertion is supported by the following findings from _Powell v. Alexander_, No. 3: 16-cv-01654 (SRU) (D. Conn. Sept. 17, 2018) that **a)** are about how conspiracies operate and point out that **b)** an agreement to violate constitutional rights needn't be overt and that a substitution of private judgment for police judgment is necessary for joint action:

a.    "failure to exercise independent judgment may help demonstrate involvement in conspiracy[.]"). Such allegations that the officers "acted at the insistence and request of" a private party, and "depict[ing] joint action" by the officers and the private party, are "sufficient . . . to withstand a motion to dismiss."

b.    "The "agreement or meeting of the minds to violate constitutional rights . . . need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants.""

c.    "He alleges facts plausibly indicating that the Diehls "exercised such extreme influence over the [state] defendants," Compl., Doc. No. 1, at 2, that the police officers ceased to "exercise[] independent judgment" and thereby made the Diehls jointly liable for their conduct."

d.    "[T]he substitution of private judgment for police judgment [is] necessary to constitute joint action."

76.     The fact that there is no information whatsoever in your 1/19/23 dismissal order about

why you refused to grant me injunctive against the USMS and CSOs to end the USMS' crimes

against me flagrantly violates my First Amendment right to be provided an objectively credible

and sufficiently detailed explanation for that partly to allow for meaningful appellate review.

This point is affirmed by the following findings from _Gulf Oil Co. v. Bernard_, 452 U.S. 89, 101

S. Ct. 2193, 68 L. Ed. 2d 693 (1981):

    a.    "the District Court failed to provide any record useful for appellate review. The
court made neither factual findings nor legal arguments supporting the need for
this sweeping restraint order."

    b.    "The court identified nothing in this notice that it thought was improper and
indeed gave no reasons for its negative ruling."

    c.    "We conclude that the imposition of the order was an abuse of discretion. The
record reveals no grounds on which the District Court could have determined that
it was necessary or appropriate to impose this order.[18] Although we do
not decide what standards are mandated by the First Amendment in this kind of
case, we do observe that the order involved serious restraints on expression. This
fact, at minimum, counsels caution on the part of a district court in drafting such
an order, and attention to whether the restraint is justified by a likelihood of
serious abuses."

77.     The Second Circuit's 11/21/22 decision in _United States v. Mingo_, No. 21-2511-cr (2d

Cir. Nov. 21, 2022) reinforced this point about the legal duty that judges have to properly explain

their rationale for rulings that they make by stating the following:

    a.    "the district court failed to state any reasons for its denial of Mingo's motions as
required by our precedent.

    b.    such failure would generally require remand to allow for meaningful appellate
review

    c.    "[w]e cannot uphold a discretionary decision unless we have confidence that the
district court exercised its discretion and did so on the basis of reasons that
survive our limited review."

    d.    "A district court has exceeded the bounds of its discretion "if it based its ruling on
an erroneous view of the law or on a clearly erroneous assessment of the evidence

or rendered a decision that cannot be located within the range of permissible decisions."

78.    The totality of your errors in K1 indisputably has constituted plain and structural error..

*Johnson v. United States*, 520 U.S. 461, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) is controlling law that addressed both plain error and structural error in litigation as it stated the following while pointing out that **a)** a lack of an impartial judge in a case is an example of a structural error in a case and **b)** plain error includes error that seriously affects the fairness, integrity, or public reputation of judicial proceedings:

   a.    "before an appellate court can correct an error not raised at trial, there must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights." 507 U. S., at 732. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "` "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."`

   b.    "But even though the error be "plain," it must also "affec[t] substantial rights." It is at this point that petitioner's argument that the failure to submit an element of the offense to the jury is "structural error" becomes relevant. She contends in effect that if an error is so serious as to defy harmless-error analysis, it must also "affec[t] substantial rights." A "structural" error, we explained in *Arizona* v. *Fulminante,* is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself"

   c.    "We have found structural errors only in a very limited class of cases: See *Gideon*  v. *Wainwright,* 372 U. S. 335 (1963) (a total deprivation of the right to counsel); *Tumey* v. *Ohio,* 273 U. S. 510 (1927) (lack of an impartial trial judge); *Vasquez* v. *Hillery,* 474 U. S. 254 (1986) (unlawful exclusion of grand jurors of defendant's race); *McKaskle* v. *Wiggins,* 465 U. S. 168 (1984) (the right to self-representation at trial); *Waller* v. *Georgia,* 467 U. S. 39 (1984) (the right to a public trial); *Sullivan* v. *Louisiana,* 508 U. S. 275 (1993) (erroneous reasonable-doubt instruction to jury)."

79.    *Maness v. Meyers*, 419 U.S. 449, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975) by doing so.

*Maness* confirms that all judges, CSOs, USMS personnel, court clerks, attorneys, and others are required to fully comply with all decisions and orders that are issued until and unless they're reversed and/or modified. You illegally, willfully, and substantially violated *Maness v. Meyers*

instead. That demands both **a)** reconsideration and reversal of your 1/19/23 dismissal order and **b)** your immediate recusal from K1.

80.      The following findings in _Matarese v. LeFevre_, 801 F.2d 98, 106 (2d Cir.1986) about FRCP Rule 60 are controlling law and clearly warrant both **a)** reconsideration and reversal of your 1/19/23 dismissal order and **b)** your immediate recusal from K1:

      a.      Rule 60(b) provides, in pertinent part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, ... or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

      b.      "Subpart (6), invoked by Matarese, "confers broad discretion on the trial court to grant relief when `appropriate to accomplish justice"

      c.      "it constitutes a "`grand reservoir of equitable power to do justice in a particular case"

      d.      "It is "properly invoked where there are extraordinary circumstances" … "or where the judgment may work an extreme and undue hardship" … "and "should be liberally construed when substantial justice will thus be served."

81.      A diligent analysis of the preceding findings in _Matarese v. LeFevre_, your 1/19/23 dismissal order, the USMS' crimes against me confirms that the following is entirely true in stark contrast to the positions that you have taken in K1:

      a.      I have already clearly and sufficiently identified specific mistakes in your 1/19/23 dismissal order that that warrant relief from them because they're errors.

      b.      I have already clearly and sufficiently identified instances in which you committed misconduct and fraud on the court in K1 partly by omitting relevant information and otherwise misrepresenting matters partly in your 1/19/23 dismissal order.  That fact further

confirms that I'm entitled to be relieved from the results of such misconduct as well as omissions and misrepresentations in your 1/19/23 dismissal order.

c.     I have already sufficiently articulated **a)** why it's not equitable that your 1/19/23 dismissal order in K1 should be upheld and **b)** other reasons that warrant being relieved from that order.

d.     Manifest injustice against me is reinforced by your 1/19/23 dismissal order partly by allowing the USMS' crimes against me to persist.

e.     The reservoir of equitable power to do justice in K1 needs to be filled largely by having your 1/19/23 dismissal order reversed and having K1 reassigned to a different judge who will be located outside of New York City in response to the fact that you and other federal judges have unlawfully turned your back on compliance with prevailing legal standards that includes controlling law.

f.     I have sufficiently identified extraordinary circumstances that I'm experiencing as well as why your 1/19/23 dismissal order is further causing me an extreme and undue hardship as a result of your unlawful disregard of the matters of law, facts, and evidence that apply to K1 that actually confirm that I'm entitled to immediate partial summary judgment and monetary sanctions in response to both **a)** illegal spoliation by the USMS of video recording evidence and **b)** harassment and stigmatization of me inside of federal courthouses. The urgent need for me to be where my father is partly to see if that an possibly diminish how tortured I am every day by not having proper closure by being unable to properly grieve about his passing is an extraordinary circumstance. My need to be able to fight far more effectively for my Mom's recovery from her strokes is another extraordinary circumstance. The fact that I need to be able to finally be accorded my right to calm and serenity (*see Sheppard*) every single time that I visit

a courthouse and throughout my visits to courthouses while I conduct myself in a lawful manner necessarily means that you were required to have ordered the USMS to end the USMS' crimes and also arrange to have a special prosecutor through the use of a private attorney with the full authority and resources of the USAO to be used in K1 to pursue contempt charges against CSOs and USMS personnel in response to the USMS' crimes.

82.    You further lied on page 14 in your 1/19/23 dismissal order by claiming that all of the harms that I complained of in K1 can be compensated by a monetary award and otherwise don't rise to the level of irreparable injury that is necessary to obtain injunctive relief. The information that I have provided thus far in this letter and previously confirms that you lied about that.

83.    Hindsight confirms that you prejudicially and biasedly abused your discretion while lying lied even more on pages 14 and 15 in your 1/19/23 dismissal order. You did so by:

    a.    Baselessly and pretextually denying my requests for declaratory relief in K1.

    b.    Ignoring the material fact that "domestic terrorism" is defined on the ACLU's web site at https://www.aclu.org/other/how-usa-patriot-act-redefines-domestic-terrorism. According to that definition, domestic terrorism includes committing an act within the territorial jurisdiction of the United States that is "dangerous to human life" in violation of the criminal laws of a state or the United States if the act appears to be intended to **a)** intimidate or coerce civilians or **b)** influence the policy of a government by intimidation or coercion.

84.    In short, the sum and substance of the USMS' crimes against me have included illegal seizures and assaults of and against me as well as verbal threats of violence against me that include a death threat against me inside of DPM. That behavior is clearly emblematic of illegal intimidation and coercion that proximately influenced governmental policies that caused other CSOs to illegally not intervene on my behalf about that. This confirms that **a)** the USMS' crimes

against me have included acts of domestic terrorism and **b)** you lied by claiming otherwise partly about this.

85.     You illegally violated my First and Fourteenth Amendment right to be apprised of precisely what you were referring to in your remark on page 15 in your 1/19/23 dismissal order with respect to your generalized claim that numerous requests by me for declaratory relief in K1 were "facially unmeritorious". It's not possible for me to rebut that without knowing precisely what you were referring to and the specific rationale for that claim. That omission demands a modification of your 1/19/23 order to provide that information in a clear and sufficiently detailed manner largely to enable possible and meaningful appellate review.

86.     Given the fact that I have proven very clearly that you lied outright and by omission in your 1/19/23 dismissal order, the following excerpts from _Reeves v. Sanderson Plumbing Products, Inc._, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) apply to the fact that you're not trustworthy and instead engaged in mendacity and fraud on the court and against me partly in your 1/19/23 dismissal order:

    a.     "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will _permit_ the trier of fact to infer the ultimate fact of intentional discrimination."

    b.     "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."

    c.     "[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"

    d.     "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."

e.      "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."

87.     On a related note, on 6/8/18, a brilliant attorney named Joanna Hendon masterfully picked apart a deceitful attorney named Michael Avenatti during an oral arguments hearing in _Cohen v. USA_, No. 18-MJ-3161, Dkt. 73 (KMW)(S.D.N.Y. Jun. 8, 2018) by stating the following that is equally applicable to your deceit in K1:

> "When I was a prosecutor and we would sum up in front of the jury, we would say to the jury: You know, when I elicited that untruthful or misleading statement about that little, tiny point from the defendant on cross, you were probably bored and you were probably wondering, ladies and gentlemen, why did I spend all that time on that little, tiny thing about which the defendant was not candid with you? And the reason I spent time on that – is because when someone, especially a lawyer, is prepared to be not straightforward and cute and, I would say, misleading with the court on the tiniest of matters, it raises a serious question about how that person, how that lawyer will conduct himself on the more serious matters."

88.     On page 15 in your 1/19/23 dismissal order, you irrelevantly pointed out that I have repeatedly prepared and submitted amended complaints in K1 while fraudulently omitting the material fact that you have illegally and prejudicially ignored and otherwise lied about and mischaracterized **a)** information that I presented in them and other filings in K1 and **b)** other relevant matters about prevailing law. That is clear error by you instead of me. You lied in your remarks on page 15 in your 1/19/23 dismissal order partly by claiming that my "Second Amended Complaint fails to state a single claim that can survive" as you also fraudulently claimed that "further amendment would be futile." That was your prohibited bias and prejudice against me talking. The flaws in K1 weren't with my complaint and amended complaints. Quite to the contrary, the flaws were and remain with having a biased judge assigned to K1. That judge was you. This confirms that plain and structural error plagued K1 due to your assignment to K1. That requires your recusal from K1 and the reversal of your 1/19/23 dismissal order.

89.     You further lied on page 15 by claiming that subject matter jurisdiction in K1 didn't exist for my claims against the United States and its officials named in their official capacity as you baselessly dismissed those claims with prejudice while pretextually choosing to subject me to obstruction of justice by doing so.

90.     You also baselessly, biasedly, pretextually, and illegally dismissed my remaining federal claims in K1 with prejudice as you lied by claiming that they failed to state a claim. The same is true about your dismissal of my claims against the City of New York, ABA, and NYU.

91.     You also baselessly abused your discretion by dismissing my state tort law claims in K1 on account of the material fact that sufficient grounds existed in K1 for you to exercise supplemental jurisdiction over those claims. Lastly, you baselessly, biasedly, and prejudicially denied my request for injunctive and declaratory relief.

92.     In short, the sum and substance of your remarks in your 1/19/23 dismissal order confirm that you violated the following findings in _Whalen v. County of Fulton_, 126 F.3d 400 (2d Cir. 1997) while subjecting to illegal and pretextual obstruction of justice:

    a.     "The constitutional right of access is violated where government officials obstruct legitimate efforts to seek judicial redress."

    b.     ""[W]hen government officials thwart vindication of a claim by violating basic principles that enable civil claimants to assert their rights effectively," an unconstitutional deprivation of a cause of action occurs."

    c.     ""[T]he Constitution protects causes of action from arbitrary interference" by government officials."

93.     What your 1/19/23 dismissal order means firmly confirms is that you were a co-conspirator with the USMS and CSOs all along in K1 while illegally countenancing and enabling the USMS' crimes to persist. This assertion is clearly supported by the following findings in _Whitney v. California_, 274 U.S. 357, 47 S. Ct. 641, 71 L. Ed. 1095 (1927):

    a.    "Every denunciation of existing law tends in some measure to increase the probability that there will be violation of it.[3] Condonation of a breach enhances the probability. Expressions of approval add to the probability."

    b.    "Advocacy of law-breaking heightens it still further."

94.    What I will discuss next about _Kondjoua v. Barr_, 961 F.3d 83 (2d Cir. 2020) and _Ortega_

_v. Moran_, No. 3: 21-cv-485 (JAM) (D. Conn. Nov. 21, 2022) further confirms that I was and

remain legally entitled to injunctive relief in K1 to end the USMS' crimes. _Kondjoua v. Barr_

states the following about illegal menacing that certainly applies to the USMS' crimes against

me:

    a.    "the Court has "defined violence as unjust or improper force""

    b.    ""menacing conduct, as when a perpetrator wrongfully and intentionally use[s] an individual's reputation... to instill fear" is sufficient to establish the threat of physical force"

    c.    "The Supreme Court has explained that "force capable of causing physical pain or injury" does not "require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality."

    d.    "although we have concluded "that the use of a police badge alone [does not] necessarily impl[y] a threat of force," we have left open the possibility "that persons who purport, through objectively reasonable manifestations, to wield the state's coercive authority can ... communicate a threat of force.""

95.    _Ortega v. Moran_ contains the following findings about an assault by a court officer inside

of a courthouse against a visitor that was illegal:

    a.    " it has long been recognized that a law enforcement officer violates the Fourth Amendment by using excessive force against a free person for the purpose of arresting or restraining his or her freedom of movement."

    b.    "the record shows that Lt. Moran "jumped" Ortega from behind and then "dragged" her to the elevator where she was tightly handcuffed and then taken to the courthouse lock-up. Ortega attests that she was not abusive and that she did not push or scratch Lt. Moran. These facts suggest that Lt. Moran intentionally attacked Ortega without provocation or any legitimate law enforcement reason. In the absence of any provocation or other reason for the use of force against Ortega, a reasonable jury could conclude that Lt. Moran's use of force was objectively unreasonable and therefore excessive in violation of the Fourth Amendment."

c.   ""If it violates clearly established law to use force against an arrestee who is no longer resisting, it follows *a fortiori* that it violated clearly established law to use the quantum of force as alleged here against a *non*-arrestee who has done nothing to provoke an arrest and in the absence of any other law enforcement reason to use force. As the Second Circuit has observed, "the police may violate clearly established law by *initiating* significant force against a suspect who is only passively resisting.""

d.   "When the facts are viewed in the light most favorable to Ortega, it is clear that no objectively reasonable law enforcement officer would have believed that it would be lawful for Lt. Moran without provocation to jump Ortega from behind and to handcuff and drag her to the elevator as Ortega claims."

96.   Furthermore, the screenshot shown next is from a video recording that someone illegally recorded on the first floor of the Brooklyn federal courthouse prior to using that video as part of a film entitled "Pharma Bro" that was about Martin Shkreli.



97.   This screenshot corresponds to the elapsed time of 17 minutes and 58 seconds in that film. This is relevant because the fact that someone was able to record that video in that courthouse confirms that my First and Fourteenth Amendment right to do that too apply and certainly warranted the issuance of an order that would allow me to freely do that inside of that courthouse as well as DPM and TM of my interactions with CSOs and USMS personnel. The

next screenshot is from the video that Mr. Morales illegally recorded of others and I in DPM on

9/21/18 by using an Apple iPhone Watch personal electronics device. The fact that he also

illegally recorded that video cements my point about the material fact that I am legally entitled to

also freely record video recordings inside of DPM, TM, and the Brooklyn federal courthouse as I

just discussed.



98.     Also, when you issued your 10/22/21 order in K1, you stated that I was an "insistent

litigant" and that I urged you "to take action on the basis of" my "many allegations alone." You

then pointed out that "it doesn't work that way" and that no "matter how serious or strident, a

plaintiff's allegations must be tested through the adversarial process." My allegations in K1 have

sufficiently been proven to be true and accurate. That includes the indisputable fact that your

earlier refusals to recuse yourself from K1 were completely wrong and prejudicial largely

because it enabled a phony judge to issue the 1/19/23 order in K1. The material fact that you

contradicted your own words in your 10/22/21 order confirms that you're a phony judge. In the

same order, you baselessly refused to issue me a free Pacer account after I had established

sufficient grounds to be granted that as a result of the material fact that I was granted a fee

waiver to commence and proceed in K1 due to financial hardships. The fact that I was granted

that fee waiver and being illegally harassed inside of federal courthouses throughout K1 was

ample grounds for you to have issued me a free Pacer account then. The process for requesting a

free Pacer account actually requires submitting a request for one to a judge. Pacer's own web site

points this out very clearly. However, you prejudicially ignored that. Your 10/22/21 order in K1

was issue just a few months after CSO Peter Kornas illegally seized and assaulted me on 6/29/21

inside of DPM near video security cameras and while CSO Anthony Venturella witnessed and

ordered Mr. Kornas to get his hands off of me during what was then and remains a Covid-19

pandemic. The fact that people have been infected with Covid-19 while fully vaccinated against

it confirms that the vaccines aren't entirely effective. What this means is that throughout K1, you

and other judges have criminally endangered my health and that of others by letting CSOs stalk

me and initiate physical contact against me that could cause me to become infected with Covid-

19 and other diseases before I could possibly infect others as a result.

99.    CSOs have repeatedly urged me to handle matters appropriately about trying to bring an

end to the USMS' crimes as they urged me to keep asking you and other judges to issue an order

to end that. CSOs who have urged me to do so partly include CSO Anthony Venturella and CSO

Imburgio. While having such conversations with CSOs about that, I've truthfully told them very

clearly that doing so has been in vain because all of the federal judges who I have dealt with

about that have proven to be spineless and biased in favor of the USMS and CSOs. You haven't

grown a spine nor abandoned your bias and prejudice against me since my last conversation with

them about that matter.

From,

Towaki Komatsu

s_/Towaki Komatsu
*Plaintiff, Pro Se*

9119 Pembroke Ct.
Fort Mill, SC  29707
Tel: 347-316-6180
Towaki_Komatsu@yahoo.com